## No. XI.

### JOHN MORTON v. GORDON AND ALLEY, ADMINISTRATORS.

(See Note 13.)

*On appeal.*

BAYLOR, JUSTICE.—In this case Gordon and Alley, as administra-
tors of Albert D. Duncan, deceased, instituted their suit in the court
below to recover of Morton, the appellant, the sum of $124.18, alleged
to have been due and owing to Duncan in his lifetime by Morton.   To
the plaintiffs' petition setting forth their demand, Morton filed his plea
of set-off, averring that Duncan before his death was justly indebted to
him in the sum of $101.   To this plea the plaintiffs demurred.   The court
sustained the demurrer and, as both parties admitted the justice of
each other's claim, gave judgment for the plaintiffs.

A bill of exceptions taken in the case also presents the same point
for the consideration of this court which arose on the demurrer; and
that is, "Does the act passed February 5, A. D. 1840, regulating the
mode of settling the estates of intestate persons, preclude the defendant
from the benefit of his plea of set-off, allowed as he contends by the
act passed also on February 5, A. D. 1840?"

Before we are permitted to decide this point, although the parties
have consented to the jurisdiction of this court, we feel bound to notice
the question of jurisdiction as one of great moment to the jurispru-
dence of this country.   Consent may do away error, but it is well set-
tled that it can not give jurisdiction.   By the act organizing the dis-
trict courts, the right to appeal is expressly prohibited, unless the sum
in controversy amounts to $300.   Here the record shows that the amount
in controversy was for a less sum.   Hence if we entertain jurisdiction,
our power to do so must be derived from some other source than the act
alluded to, or the consent given.

It is urged that so much of the act of Congress as restricts the
right of the citizen to appeal from the District to the Supreme Court
is unconstitutional, and that this tribunal has the power to hear and

5, 1840, against surveys on unrecommended certificates after May 1, 1840, did
not legalize surveys made either prior or subsequently on unrecommended
certificates.   Warren v. Shuman, 5 T., 441.   It seems that surveys on genuine
headright certificates are valid, though not recommended by commissioners.
Howard v. Perry, 7 T., 259; Hart v. Gibbons, 14 T., 213.   But under Act of
January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313), authority to issue
patents on first class headright certificates was based on recommendation.
Miller v. Brownson, 50 T., 583.   Under extension of time allowed by Con-

determine all causes which may originate and have been decided in the district courts.

If this position be correct, then we can legitimately consider and determine the point arising on the demurrer.

We think the power here contended for justly belongs to this tribunal, and in coming to this conclusion we have not been unmindful of the magnitude of the principles involved, and the respect due to the popular branch of the government.

We have felt the delicacy and embarrassment of this question, and, if we were permitted, from these and many other considerations (as the amount in controversy is small) we would be induced to pass it over. "Fortunately, however, for the people, the function of the judiciary in deciding constitutional questions is not one which it is at liberty to decline. While it is bound not to take jurisdiction if it should not, it is equally true that it must take jurisdiction if it should; it can not, as the Legislature may, avoid a measure because it approaches the confines of the Constitution; it can not pass it by because it is doubtful; with whatever doubt, with whatever difficulties a case may be attended, it must decide it when it arises in judgment. It has no more right to decline the exercise of a jurisdiction which is given than to usurp that which it not given; the one or the other would be treason to the Constitution."

With these few preliminary remarks, we proceed to give some of the reasons which have induced us to decide in favor of the power claimed for this court. We have searched in vain for the express power delegated to Congress in the Constitution to enact the restriction. If it has the power then it must be by implication alone; and by implication perhaps, Congress have the power to restrict the right of appeal from the inferior to the district courts.

If we compare the Constitution of this country with that of the United States and most of the States, we shall find this remarkable difference: the Constitution of the United States, for example, after speaking of the appellate jurisdiction of the Supreme Court, expressly states that it is to be exercised *with such exceptions and under such regulations as the Congress shall make.* Here the power to restrict is clearly given, and under this grant of power Congress has said no appeal from the circuit court shall be allowed unless the amount in controversy exceeds $2000. If our Constitution had contained similar expressions, the right to restrict would have been placed beyond doubt. But were these expressions casually dropped from the circumstance that the Constitution was formed in the midst of a revolution, or were they

stitution of 1845, a survey made on an unrecommended certificate prior to January 1, 1844, suit to establish claim could be maintained in 1847. Lewis v. Mixon, 11 T., 564; Hart v. Gibbons, 14 T., 213; Scott v. Mather, 14 T., 235. Under Act of February 7, 1860 (Gammel's Laws of Texas vol. 4, p. 1410), providing for re-examination of rejected warrants and certificates, a rejection made before limit of time fixed in section 11 is not void, the object of the statute being to give claimants ample time to prove their claims. Durrett

left out of the Constitution in order to take from Congress this restrictive power, and leave the appellate jurisdiction of the Supreme Court unfettered, "coextensive within the limits of the Republic?" To arrive at the true meaning, from the circumstances here stated, has produced our chief embarrassment. It may be said, although the Constitution is silent as to this restrictive power found in similar instruments, that silence is not extinction, and that Congress may, by a fair and liberal construction of its authority, exercise this power when the public welfare demands it. This may be true as to tribunals inferior to the district courts; but it would be carrying the doctrine of implication too far, as we conceive, to make it applicable to the question now under consideration. It may also be contended, as Congress have the power to make all laws which shall be necessary and proper for carrying all other powers into execution, this gave the right to enact the restrictive clause complained of. But in the case of Gibons v. Ogden, 9 Wheat., 1, etc., Chief Justice Marshall, in delivering the opinion of the court, says this limitation on the means which may be used is not extended to the powers which are conferred.

The difficulty still remains, and we confess we have been unable to solve it by any construction of the Constitution which would confer this power on Congress. The Supreme Court of the United States have expressly decided that they derive their appellate jurisdiction from the Constitution and not from acts of Congress. That it is true, Congress may restrict their appellate jurisdiction, for this power is given; but in all cases where they have not thought proper to do so, the jurisdiction remains with the court. In other words that they derive their jurisdiction from the Constitution itself. This doctrine we think correct, and that the jurisdiction of our Supreme Court, which is admitted by all to be appellate only, is derived from the Constitution in proprio vigore, and is "coextensive within the limits of the Republic." Whether this appellate jurisdiction thus derived was intended to be exerted over all the inferior courts of the country, we leave open for the future decisions of this tribunal. It is sufficient to say for the present, that Congress has no power to restrict the citizen in his right to appeal from the decisions of the district court to the Supreme Court, in cases cognizable in the former tribunal. If we test the soundness of this opinion by the rules which have been adopted for the interpretation of the Constitution of the United States, we think we shall be borne out in our conclusions on this subject.

One of those rules is, where the grant inures solely and exclusively

v. Land Commissioner, 28 T., 687; Under Act of April 25, 1871 (Gammel's Laws of Texas, vol. 6, p. 962), holders of unlocated certificates were not required to locate them at any particular period between passage of law and January 1, 1875. Laws in force prior to Act of November 29, 1871 (Gammel's Laws of Texas, vol. 7, p. 47), did not require certificate and field notes to be returned within twelve months after survey. Snider v. I. & G. N. Ry. Co., 52 T., 306; Snider v. Methvin, 60 T., 487. Under Revised Statutes 1895, arts. 4138 and 4145, survey must be made within twelve months after entry, and field notes returned within twelve months after survey. Von Rosenberg v.

for the benefit of the grantor himself, no one would deny the propriety of giving to the words of the grant a benign and liberal interpretation. Keeping this rule in view, let us refer to the eleventh clause of our Declaration of Rights. We there find that a remedy is guaranteed to the citizen for the redress of every civil injury; and we are here to pause, in order to ascertain what is properly embraced in the term *remedy*. Is it to be full, when a court of original jurisdiction only is provided to enforce it? Did the Constitution intend that in regard to one class of rights there should be supervision, and in another that there should be none? Such a discrimination and unjust spirit can not be deduced from that sacred instrument. It is the nation's panoply! No one ought to be left precluded; nay, irrevocably doomed to abide the ministry of justice, by one functionary in the first instance. Why, in any class of cases, was appellate relief imparted? Surely on the reasonable presumption that the court acting primarily in the cause might err, or might oppress; and it was to remit the citizen to another and higher tribunal to have the error or the oppression, whether real or supposed, corrected or rebuked. Still another motive operated. The government being established to insure the protection, prosperity and happiness of the people, the administration of justice in the original and supervisory forums would conduce to public satisfaction.

Another rule of construction is: Where the power is granted in general terms, as the jurisdiction of this court has been, the power is to be construed as coextensive with the terms, unless some clear restriction upon it is deducible from the context. We do not mean to assert, as we have already intimated, that it is necessary that such restriction should be expressly found in the context. It would be sufficient if it arise by necessary implication. But it is not sufficient to show that there was, or might have been, a sound or probable motive to restrict it. A restriction founded on conjecture is wholly inadmissible. The reason is obvious. The text was adopted by the people in its obvious and general sense. For this doctrine, see Story's Commentaries on the Constitution, vol. 1, p. 407. By applying this liberal rule of construction to the terms in which the jurisdiction of this court is conferred, we can not doubt for a moment but that it was the intention of the framers of the Constitution to give it a supervisory care and control over all cases originating and decided in the district courts; and we are strengthened in this opinion from the consideration that the district court is the connecting link between the people and this tribunal of the last resort. It may be regarded also as the only channel through which

---

Cuellar, 80 T., 249. So long as the title is imperfect or inchoate, the State may establish such regulations as it may deem necessary to perfect the title, and attach such terms as it may deem proper. It may even disavow. Land Commissioners v. Walling, Dal., 524; Johns v. Republic, Dal., 621; Hosner v. De Young, 1 T., 764; Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Land Commissioners v. Raguet, 2 T., 98; Norton v. Land Commissioner, 2 T., 357; League v. De Young, 2 T., 497; Kemper v. Victoria, 3 T., 135; Land Commissioners v. Riley, 3 T., 237; Smith v. State, 5 T., 397; Jones v. Borden, 5 T., 410; Warren v. Shuman, 5 T., 441; Land Commissioner v. Smith, 5 T., 471; Paschal v. Perez, 7 T., 348; Lewis v. Mixon, 11 T., 564; Hart v. Gibbons,

all admiralty and maritime cases, all cases affecting ambassadors, public ministers or consuls, can be brought into this tribunal. In the cases above enumerated the district courts have exclusive original jurisdiction. Surely, then, when the decisions in such cases are to be governed by the laws of nature and of nations, and when the peace and happiness of the Republic may often depend upon their correct adjustment, no one will contend, in this class of cases, that Congress have the power to restrict the right of the parties to appeal. If not, where shall we draw the line of demarcation? To attempt it, would be invidious and contrary to the soundest principles of construction. To illustrate still farther: It will be found by reference to the seventh and eighth sections of the Constitution, where after pointing out the manner in which the Supreme Court shall be constituted, the proviso in the eighth section says "that no judge shall sit in a case, in the Supreme Court, tried by him in the court below." This proviso evidently shows that it was the intention of the makers of the Constitution to allow appeals to be taken directly from the district to the Supreme Court. The appellate right here recognized, although not conclusive, is certainly given without restriction. With the application of one other principle, we shall close our inquiries on this branch of the subject. It is admitted to be a sound rule that all remedial laws should be construed liberally. This rule is equally applicable to the remedial parts of the paramount law. If so, we think we have not erred in giving such a construction to the constitutional powers of this court as will enable every man, suing or sued in the district court, to have a remedy here to redress his real or imaginary wrongs. We do not perceive any ill consequences growing out of this decision. The only effect it can have will be to enlarge the right of appeal to all the citizens equally alike, and give uniformity to the decisions of the courts throughout the country. We have had but little time to examine the important principle here settled; if errors should hereafter be found to exis in the opinion we trust it will not be attributed to a love of power, but to an overjealousy in guarding the rights of the people, and a desire to hear them unrestricted in this, the last citadel of justice known to the laws and Constitution of the nation.

The remaining point may be disposed of in a few words. We think the plea of set-off should have been allowed, as there is no conflict in the two acts referred to. The plaintiffs were not entitled to recover more than the balance due them, after allowing the set-off. If Morton had commenced his action against them for the set-off pleaded, then he could not have recovered, unless he had first proceeded in the way

14 T., 213; Hamilton v. Avery, 20 T., 612; Peck v. Moody, 23 T., 93; Sherwood v. Fleming, 25 T. Supp., 408; Smith v. Taylor, 34 T., 589; Snider v. Methvin, 60 T., 487; Capp v. Terry, 75 T., 391; Jones v. Lee, 86 T., 25; Thompson v. Baker, 90 T., 163; League v. De Young, 11 How., 185. Under section 23 of Act of February 5, 1841 (Gammel's Laws of Texas, vol. 2, p. 627; Rev. Stats. 1895, art. 5259), location claims and surveys, headright certificates, pre-emption claims, etc., are sufficient title to maintain action of trespass to try title, or defense to. Lambert v. Weir, 27 T., 359; Buford v. Gray, 51 T., 331; Buford v. Bostick, 58 T., 63; Horne v. Gambrell, 1 App. C., sec. 999. Prior to Rev. Stats., 1879, action could be maintained on right acquired by mere location.

pointed out by the act regulating the settlement of the estates of intestate persons. But why compel him to do this, as in justice his demand was extinguished by that of the plaintiff?

It is therefore ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed; and proceeding to give such a judgment as in our opinion ought to have been given in the district court, we order, adjudge and decree that the appellees, Gordon and Alley, as administrators, etc., do recover from the appellant, Morton, the sum of $23.18, with legal interest from the rendition of this judgment until paid; and that the appellees pay the costs of this court, and the appellant the costs in the court below.

*Reversed and rendered.*

Judges Hemphill and Scurry say: "We concur in this opinion so far as relates to the jurisdiction, but not on the question of the set-off."

## NO. XII.

### JOHN H. FOWLER v. IRA S. POOR.

#### (See Note 14.)

*Appeal from Red River County.*

HEMPHILL, CHIEF JUSTICE.—The plaintiff having filed the affidavit and executed the bond required by law, the clerk of the District Court for the County of Red River issued a writ of attachment against the property of the defendant on the 17th of April, 1840, but did not file his petition until the 27th of July afterwards. Among other matters, the defendant in his answer pleads that the plaintiff ought not to maintain his action, because the petition was not filed until after the issuing of the attachment. The plea was sustained by the court, and from that decision an appeal has been taken.

The counsel for the appellant insisted strenuously that in taking out a writ of attachment nothing more was necessary than the bond and affidavit required by the act regulating attachments, approved January 28, 1839. Were our attention confined to that statute alone, that conclusion might readily be adopted. But suit by attachment is a civil action; and on examining and comparing the various statutes of this Republic in relation to proceedings in civil suits, it will be found that in taking out any writ or process the plaintiff is required to file his petition.

The first statute in the order of time is the "Act establishing the jurisdiction and powers of the district courts," approved December 22, 1836, volume 1, page 198, of Laws of Texas. A portion of section 8 of this

---

Since then, it requires location and survey. Thomson v. Locke, 66 T., 383; Duren v. H. & T. C. Ry. Co., 86 T., 287. Survey must be legal, 80 T., 249. Von Rosenberg v. Cuellar, 80 T., 249. Order of survey under colonization laws, prior to closing Land Office in 1835, is not sufficient title, unless presented to Board of Land Commissioners and established in the manner required by

act is expressed in the following terms: "It shall be the duty of the plaintiff or his attorney, in taking out a writ or process, to file his petition with a full and clear statement of the names of the parties, whether plaintiff or defendant, with the cause of action and the nature of relief which he requests of the court," etc.

It may be argued that the terms "writ or process," as used in the above statute, refer only to the summons issued in ordinary civil suits; but the expressions are general and sufficiently broad to embrace all processes of every description which may be obtained at the commencement of a civil action. By this provision of the above act, then, it seems that a petition is a necessary prerequisite to the taking out of any writ or process; and according to the well established principles of construction, this provision must remain in full force and effect until repealed in express words by some subsequent statute, or the matter contained in some subsequent statute be so clearly repugnant thereto that it necessarily implies a negative of the same. It is our duty to construe all statutes in relation to the same subject matter, which do not negative one another, in such a manner that they may all stand together and have concurrent efficacy. According to these principles of construction, the act regulating attachments does not negative the necessity of a petition; but requires in addition thereto the affidavit and bond of the plaintiff, before an arbitrary process will be issued to seize on the property of the defendant. An opposite construction would not only impair the harmony of proceedings in our courts in civil actions, but would operate very oppressively on the defendant in attachment. In ordinary suits the petition would inform him of the cause of action, and he could prepare his defense; but when dragged into court by his property, ignorant of the nature of the demands against him, until they are developed in the progress of the trial, he would be taken by surprise and rendered wholly defenseless. Our system of proceedings in civil suits differs from that known in England and adopted in most of the States of the United States. There, the writ generally precedes the declaration. No injustice is committed by taking out the attachment in the first place, because long before the trial the declaration will inform the defendant of the nature of the plaintiff's demand. Here the petition is required to precede or be concurrent with the writ or process and no other method of instructing the court, the jury or the defendant in the nature of the plaintiff's cause of action has been provided by law. The mode of conducting proceedings in civil suits by petition and answer is so highly appreciated by the legislative power of this Republic, that at the last

---

Act of December 14, 1837 (Gammel's Laws of Texas, vol. 1, p. 1404). Jones v. Menard, 1 T., 771; Trimble v. Smithers, 1 T., 790; Hughes v. Lane, 6 T., 289. Nor is a certificate not recommended by Board of Land Commissioners under Act of January 29, 1840 (Gammel's Laws of Texas, vol. 2, p. 313). Kemper v. Victoria, 3 T., 135. Land certificates required by Act of August 1, 1856 (Gammel's Laws of Texas, vol. 4, p. 432), to be presented to Commissioner of Claims for registry within two years from September 1, 1856, are not evidence of title, without proof of registration. Peck v. Moody, 23 T., 93. Rules stated above are not applicable where patents have issued. Merrill v. Roberts, 64 T., 441.

session of Congress it was expressly enacted, "that the adoption of the common law shall not be construed to adopt the common law system of pleading; but the proceedings in all civil suits shall as heretofore be conducted by *petition and answer.*" Vide Laws of 4th Congress, p. 88. Here is strong legislative declaration that the proceedings in civil suits had been heretofore commenced by petition, and that they shall be conducted in the same manner for the future. This law was in operation some time before the attachment issued in this case. Upon the examination of all the laws in relation to the subject, we are of opinion that the court below did not err in sustaining the plea of the defendant, and it is ordered and decreed that the judgment of the court below be affirmed.

*Affirmed.*

Judges Terrell and Scurry concur; Judges Baylor and Hutchinson dissent.

## No. XIII.

### THOMAS CAYCE V. HINTON CURTIS.

#### (See Note 15.)

*Appeal from Matagorda County.*

TERRELL, JUSTICE.—This cause comes up on an appeal from the District Court of Matagorda County to reverse a judgment rendered on a motion to quash an execution which had been issued by the clerk of that court in favor of the appellee against the appellant, upon what is termed in common parlance, a twelve month's bond. The bond was taken under the provisions of the eighth section of an act, "entitled an act for the collection of the amounts due on judgments of the Supreme, district and county courts."

Two grounds were taken in support of the motion, viz: First, that the bond upon which the execution issued was not under seal; and second, that the sheriff had made no return on the original execution under which the property was sold and for the payment of which the bond was given.

The court below refused to quash on either ground and the cause is brought here for the reconsideration of that decision.

On the first point it is urged by the counsel for the appellant that the word "bond," used in the statute, being a common law term, we must refer to the common law for its legal signification; and that by that law no instrument is a bond which is not under seal. The truth of the proposition that sealing is an absolute requisite to the validity of a bond at common law is readily admitted; but the applicability of that rule to the case under consideration is not perceived. This bond was taken at a

---

Note 11.—Raquet v. Nixon, p. 386.
   Attachment is an auxiliary process and plaintiff may proceed to judgment when it is quashed. Sydnor v. Chambers, Dal., 601; Cloud v. Smith,

time when the common law afforded no rule of decision or practice in this country; and consequently that law can not be legitimately resorted to, even for the purpose for which it is invoked by the counsel for the appellant, unless it be shown that the civil law (which under certain modifications was at that time the law of the land) had no term of similar import; for we regard it as a correct rule of construction, that where technical terms are used in a statute they are to be referred for their signification to terms of similar import in the system of laws which prevails in the country where the statute is passed, and not to another system which is entirely foreign to the whole system of municipal regulations by which that country is governed. 3 Martin, 185; 7 Martin (N. S.), 162

Were a term of art or science wholly unknown to the laws of the country, and which in itself imported a definite meaning, to be employed in a statute, then indeed the court would be compelled, ex necessitate rei, to look to the particular art or science from which it was taken, for its definition; but when the general or established law affords an equivalent term to the one used in the statute, which is well known and defined in its signification and operation, it can not be doubted that the Legislature intended to give to the new word only that force and signification which the old one possessed. In the civil law there is a term, and one in very common use, too, which is equivalent to the word "bond" in the common law. That term is "obligation," which is defined to be, first, "the binding power of any contract or agreement," and second, "a notarial instrument, or deed." This definition, embracing as it does all the essential properties of a bond, shows that the two words are used correlatively under the two systems. The word "obligation," it is true, is one of more extended signification than the word "bond," because it not only embraces all such undertakings as would at common law require a technical bond to sustain them; but it also embraces such other undertakings as are known to that system by the term "parol contracts." But the simple fact of its being a term of more comprehensive legal signification affords no presumption that in particular instances it is not the equivalent word; it may be said to be the generic term, and the other the species.

"Obligation," then, being equivalent under the civil law to the word "bond" in the common law, we are of the opinion that the latter term when employed in the statutes of the country, previous to the adoption of the common law without other definition, is to be referred to the civil law for its meaning, its force, and its legal construction; and that as

1 T., 611; Chevallier v. Williams, 2 T., 239; Green v. Hill, 4 T., 465; Sydnor v. Totman, 6 T., 189; Campbell v. Wilson, 6 T., 379, 392; Moore v. Corley, 4 App. C., sec. 139. The suit abates when writ is quashed if personal judgment can not be rendered against defendant. Savings Institution v. Burrow, 37 T., 88; Stewart v. Anderson, 70 T., 588; Hochstadler v. Sam, 73 T., 315; Rogers v. Burbridge, 5 T. C. A., 67. Is a harsh and summary remedy and all precedent conditions must be strictly complied with. Fowler v. Poor, Dal., 401; Sloo v. Powell, Dal., 467; Gregg v. York, Dal., 528; Sydnor v. Chambers, Dal., 601; Wooters v. McGee, 1 T., 17; Chevallier v. Williams, 2 T., 239; Caldwell v. Haley, 3 T., 317; Sydnor v. Totman, 6 T., 189; Marshall v. Alley, 25 T., 342; Culbertson v. Cabeen, 29 T., 247; Sheffield v. Gay, 32 T., 225; Moody v. Levy,

the seal, not being known to the latter, was never required to give effect and validity to the one, we are satisfied that it is not essential to the validity of the other.

There is another ground on which we should hold this instrument to bind the parties according to the terms of the statute which authorizes it to be taken. It is a well established principle in the civil law, that "in whatever way a party binds himself, he shall remain bound." 5 Martin, 194; 4 Martin (N. S.), 25, 116; 3 Martin (N. S.), 517. The appellant was the purchaser of property at sheriff's sale, and for the purchase money of which, he was, by the statute, entitled to a credit of twelve months, provided he gave bond for the payment of the money at the expiration of that time. In consideration of this right, and for the purpose of getting immediate possession of the property, he bound himself in writing to pay the money as directed by the statute; and according to the above mentioned principle, he must remain bound in the terms of his obligation; and upon his failing to comply with those terms, the statute gave the remedy, viz., an execution upon the bond.

We are therefore unanimously of the opinion that the court below did not err in refusing to quash the executions, for the reasons presented in the first ground upon which the motion was predicated.

Upon the second point also we have no hesitation in deciding that there is no error in the judgment rendered by the court below. The statute does not require that the sheriff should have made any return in writing on the original execution; had it done so, however, we should have considered the requirement as only directory to the sheriff—and consequently could not impair the plaintiff's right under the law, in the security which was given for the purchase money of the property sold under execution for his benefit. 12 Wheat., 64; 6 C. R., 440.

We are therefore of the opinion that the judgment of the District Court for Matagorda County was correct, and order that the same be affirmed with costs.

*Affirmed.*

## No. XIV.

### THOS. CAYCE v. HORTON AND CLEMENTS.

#### (See Note 16.)

*Appeal from Matagorda County.*

TERRELL, JUSTICE.—This cause being of similar character, turning upon the same points and governed by the same principles with that of

58 T., 532; Evans v. Tucker, 59 T., 249; Stiff v. Fisher, 2 T. C. A., 346; Sarrazin v. Hotmann, 16 T. C. A., 351; Ball v. Bennett, 21 T. C. A., 399; Dreiss v. Faust, 1 App. C., sec. 33; Whitley v. Jackson, 1 App. C., sec. 575; Schwartz v. Burton, 1 App. C., sec. 1216; Scram v. Duggan, 1 App. C., sec. 1269. No presumption will be indulged to supply defects. City Nat. Bank v. Flippen, 66 T., 610; Focke v. Hardman, 67 T., 173; Perrill v. Kaufman, 72 T., 214; Moore v. First Nat. Bank, 82 T., 537. But literal exactness is not required. Lewis v. Stewart, 62 T., 352. If the writ of citation is defective and the defect

Cayce v. Curtis, already decided, we refer to the opinion delivered in that case for the reasons upon which our decision is made.

We affirm the judgment of the District Court of Matagorda County, with all the costs accruing upon the appeal to this court.

*Affirmed.*

## No. XV.

### EX PARTE COLIN DE BLAND.

(See Note 17.)

*Fort Bend County.*

TERRELL, JUSTICE.—This was a motion made by an attorney of the District Court for the county of Fort Bend to dismiss all cases on the docket of said court which had originated since the 19th day of August, 1839, and to adjourn the court until the next regular term. The grounds in support of the motion are, that the clerk of the court was not elected agreeably to the provisions of the Constitution and laws of the Republic, but that he exercised the functions of the office by virtue of an appointment from the district judge. The first question for this court to decide, and which controls the case, is whether we can take cognizance of the case in the form in which it is brought before us. We are unanimously of opinion that we can not.

The law relied upon in argument, as giving the court jurisdiction in the case, is the third section of the act of Congress organizing the Supreme Court, which says: "The said Supreme Court shall have jurisdiction over, and shall hear and determine all manner of pleas, plaints, motions, causes and controversies, civil and criminal, which may be brought before it from any court in this Republic, either by appeal or other legal process, and which shall be cognizable in the said Supreme Court, according to the Constitution and laws of this Republic." The question here naturally arises, has this case been brought here "according to the Constitution and laws of the Republic?" The "laws of the Republic" point out the mode by which suits shall be brought in the different courts. This court, possessing "appellate jurisdiction" only, can consequently take cognizance of such cases only as are properly brought here from some of the inferior courts. It therefore follows, as a necessary consequence, that they must be brought into those inferior courts in the manner pointed out by law; and if they are not so brought into the court below, the defect can not be cured by an appeal to this court.

There are several methods known to the law by which causes may be brought into the district court. The one generally adopted is by petition and summons, and we do not say, if objection had been made to the writ in any cause in the court, as having been issued by a clerk who had no

---

is discovered before defendant answers, a new writ may be awarded. If de-
fendant answers, he waives objections to process. Wescott v. Menard, Dal.,
503; Kavanaugh v. Brown, 1 T., 481; Cartwright v. Chabert, 3 T., 261; Wood v.

authority, the cause could not then properly have been brought here. Our statutes also authorize motions against officers of court in certain cases; but then the party is entitled to previous notice, that he may prepare for his defense. The most usual method perhaps of ascertaining whether an individual has authority to exercise the functions of an office is by an information in the nature of the ancient common law writ of quo warranto. None of these methods, nor any other pointed out by our statutes or known to the common law, having been pursued in this case, we can not take cognizance of it, but are compelled to declare the whole proceeding coram non judice, and consequently void. The case is therefore ordered to be stricken from the docket for want of jurisdiction.

*Dismissed.*

## No. XVI.

### REPUBLIC OF TEXAS v. THOMAS I. SMITH.

#### (See Note 18.)

*Appeal from Travis County.*

HANSFORD, JUSTICE.—From the record in this case it appears that Smith, the appellant, was indicted at the spring term of the District Court for Travis County for "holding a faro bank, for the purpose of playing at faro and inviting and receiving bettors," and at the fall term was tried, and the jury returned a special verdict of "guilty of dealing faro in the city of Austin, previous to 1840, and after the first of May, 1839." Upon the return of this verdict the appellant, by counsel, moved in arrest of judgment, upon the ground that Austin, where the offense was alleged to have been committed at the time charged in the bill of indictment, was within the territorial limits of Bastrop County. The motion was overruled by the court; and the appellant was ordered by the court to pay a fine in accordance with the statute passed May 26, 1837, entitled "An act to suppress gambling," of $500, together with costs of prosecution, and to remain in custody of the sheriff until the sentence of the court was complied with. From this judgment of the district court the appellant prayed an appeal to this court, and charges error in the court below in overruling the motion in arrest of judgment.

Before we proceed to the discussion of the question as to whether it was error or not in the court below in overruling the motion in arrest of judgment, we will meet and dispose of a preliminary question of paramount consideration, and that is, has the defendant in a criminal prose-

---

Smith, 11 T., 367; Yturri v. McLeod, 26 T., 84; Herndon v. Crawford, 41 T., 267; Armstrong v. Bean, 59 T., 492; Rice v. Peteet, 66 T., 568; Cahill v. Ry., 76 T., 100.

**Note 12.**—Guest v. Guest, p. 394.

Court has no power to enter an involuntary nonsuit. Allcorn v. Sweeney, Dal., 494; Sandoval v. Rosser, 86 T., 682, 686. Appeal does not lie from judgment of nonsuit by a justice of the peace on ground that plaintiff failed to appear. Morgan v. Johnson, 4 T., 117.

cution, upon an indictment in the district court, the right of an appeal to the Supreme Court? We think that he has. We believe that such a right is in accordance with the genius and spirit of our institutions and secured to him by the Constitution and laws of this country. And it must, we think, be conceded by everyone that it is a question, whether considered with reference to the infancy of our jurisprudence yet to be perfected by subsequent adjudication and the wisdom of the Legislature, or the almost untried harmony of our institutions, political as well as judicial, which have as yet been but slightly explored and partially developed, or the sacred character of the rights to the citizens, as one involving the most grand and solemn considerations.

The word "appeal" comes from the civil law; and the nature and operation of an appeal, in a technical sense, can not be a subject of doubt in proceedings governed by that law. Indeed, it is sometimes used to denote the nature of appellate jurisdiction, without any regard to the particular mode by which a cause is transmitted from an inferior to a superior jurisdiction. In this sense it is used by Blackstone when he speaks of the Court of Exchequer as a court that hath no original jurisdiction. So also the same elegant writer denominates the House of Peers of England as the Supreme Court of the Empire. See 3 Black. Com., 56.

There are some other senses in which the word occurs in the common law, which we may pass over in silence, as they have no application to the present inquiry.

Appeal ("appellatio" in the civil law) is defined—"ab inferioris judicis sententia ad superiorem provicare"—the removal of a cause from the sentence of an inferior to a superior judge; or as Blackstone has expressed it, "a complaint to a superior court of injustice done by an inferior one." Calveus has collected the definitions given by many learned civilians, but they all resolve themselves in the above. See 3 Black. Com., 312; Calveus' Lexicon, "Appellatio;" Shepherd's Abridgement, "Appeal." Each of these definitions accurately states the meaning but not the mode or effect of an appeal.

The remedy by appeal—as known and practiced in England—is in a great measure confined (for I speak not of appeals of death and of robbery, and of summary proceedings before magistrates) to courts of equity, admiralty, and ecclesiastical jurisdiction, in all of which no jury intervenes; and in each of those courts the judge is in general the sole arbiter both of the law and the facts, and the mode of proceeding is borrowed almost exclusively from the civil law.

---

Note 13.—Morton v. Gordon and Alley, p. 396.

Jurisdiction over person may be conferred by consent or by acts tantamount to consent. Green v. Hill, 4 T., 465; Campbell v. Wilson, 6 T., 379; Burnley v. Cook, 13 T., 566; Life Ins. Co. v. Ray, 50 T., 511; Galveston Co. v. Noble, 56 T., 575; Brooks v. Chatham, 57 T., 31; Glass v. Smith, 66 T., 548; Douglas v. Baker, 79 T., 499; Fairbanks v. Blum, 2 T. C. A., 479; United Workmen v. Stumpf, 24 T. C. A., 309; Osborne v. Barnett, 1 App. C., sec. 125; Life Ins. Co. v. Fitzgerald, 1 App. C., sec. 1346. But jurisdiction over subject matter can not be conferred by consent. Wynns v. Underwood, 1 T., 48; Swigley v. Dickson, 2 T., 192; Foster v. McAdams, 9 T., 542; Burnley v. Cook, 13 T., 586; Life Ins. Co. v. Ray, 50 T., 511; Henderson v. Beaton, 52 T., 29;

And it is undoubtedly true that in courts proceeding according to the course of the civil law, an appeal from an inferior to a superior tribunal removes the whole proceedings, and usually, though not invariably, opens both the law and the facts for re-examination.  3 Dallas, 321; 5 Cranch, 281.

By the eighth section, fourth article of our Constitution, we find the Supreme Court of Texas clothed with appellate jurisdiction only, which shall be coextensive within the limits of the Republic; but neither in that section or elsewhere in the Constitution do we find its appellate jurisdiction restricted to any particular class or character of actions. We search in vain in that instrument for any such restriction.  It can not be found.  But on the contrary, in the Declaration of Rights, it is emphatically declared that all courts shall be open, and "every man for any injury done him in his lands, goods, person or reputation, shall have remedy by due course of law."  Dec. of Rights, sec. 11.

We think it clear then that the right of appeal from the district court to the Supreme Court in criminal prosecutions, as well as in civil actions, is secured to the defendant in such prosecution by the Constitution.  But if we were of opinion that any doubt could be entertained of the clear and indefeasible right to an appeal in criminal cases, by the Constitution (and indeed we have none, but rest it upon that instrument alone), that doubt would in a great measure be removed by the act entitled "An act to establish and organize the Supreme Court, and to define the powers and jurisdiction thereof."  In the third section of that act there is a legislative declaration of the right of appeal in criminal as well as civil cases: "And the said Supreme Court shall have jurisdiction over and hear and determine all pleas, plaints, motions and controversies, civil and criminal, which may be brought before it."  And in the sixth section the same right of appeal is clearly and indisputably recognized in language which none can mistake, in the following words: "The sentence of the Supreme Court, in all criminal prosecutions brought before such court from any other courts, shall be executed in like manner in all respects as if such sentence had been rendered in the court wherein the prosecution originated; and the sheriff of the proper county shall be charged with the execution of such sentence."  Hence we see that immediately after the organization of our government, a legislative declaration of the constitutional right of appeal in criminal cases was made.  But it was contended by the district attorney for the Third Judicial District and by the Attorney-General, that if indeed the Supreme Court had jurisdiction of criminal cases and could hear and determine all manner of pleas, plaints, motions and controversies, civil

---

Smith v. Parks, 55 T., 82, 86; Watson v. Baker, 67 T., 48, 50; Griffin v. Brown, 1 App. C., sec. 1099; Haney v. Milikin, 2 App. C., sec. 223.  The principle of set-off is statutory and analogous to "compensation" in the civil law.  It is unknown to the common law and was engrafted into our law by Act of February 5, 1840 (Gammel's Laws of Texas, vol. 2, p. 236), to avoid multiplicity of suits.  Bates v. Republic, 2 T., 616; Thomas v. Hill, 3 T., 270; Holliman v.

and criminal, yet it could exercise that jurisdiction only by writ of error, and not by appeal; that the common law having been adopted by the Constitution in criminal proceedings became a part of that instrument, and by that law a cause was removed from an inferior to a superior tribunal by writ of error only and not by appeal; that by a writ of error, the errors of law alone could be examined in the Supreme Court, and that the usual effect of an appeal from an inferior tribunal being one that opened the facts as well as the law for re-examination, could not be admitted as a right to the defendant in the district court in a criminal prosecution, because no such right was ever known to the common law of England.

We frankly admit that we search in vain in the common law for an instance of an appellate court retrying the cause upon the facts; and we know that the only mode known to the common law of removing a cause from an inferior to a superior tribunal was by writ of error. But we can not admit that in adopting the common law, the Convention intended thereby to adopt irrevocably the practice of the common law in criminal proceedings, and tie down the Legislature of the country to the common law course of proceedings. For we see that the very framers of the Constitution itself, after adopting the "common law as the rule of decision in criminal proceedings," have gone on and made considerable innovations in the practice of that very code which they had just adopted. At common law, in criminal cases, the defendant had not the right to have compulsory process to compel the attendance of witnesses, etc. He had not the right to be heard by counsel, except upon collateral or incidental questions; he had not the right of the writ of habeas corpus; nor did he, indeed, have the right of the benefit of testimony in his favor under the sanction of an oath; all of which is secured to the citizen by our Constitution and are innovations in the practice of the common law. It is our opinion, then, that the Convention intended only to adopt the common law, to use their own language, "as the rule of decision" in criminal proceedings, and no more of the forms and peculiar writs of that code than might be found necessary to carry out the objects contemplated by that adoption. And surely the Convention never intended, when they inserted in the Constitution a provision creating an appellate court in criminal as well as civil cases, to deny the accused who might wish to appeal from the district court to the Supreme Court the right of having the facts of his case, as well as the law, opened to re-examination. We can not believe it. We decide then that the defendant in a criminal prosecution in the district court has the right of

Rogers, 6 T., 91; Fitzhugh v. Orton, 12 T., 4. Set-off must be mutual and due in the same right with the debt sued on. Allbright v. Aldrich, 2 T., 166; Wright v. Treadwell, 14 T., 255; Simpson v. Huston, 14 T., 476; Bullock v. Dunbar, 17 T., 243; McCorkle v. Lawrence, 21 T., 731; Hamilton v. Van Hook, 26 T., 302; Riley v. Runkle, 29 T., 92; Maxey v. Besser, 44 T., 506; Evans v. Bell, 45 T., 553; Masterson v. Goodlett, 46 T., 402; Casey v. Hanrick, 69 T., 44; Pires v. Snodgrass, 91 T., 105; Sheilds v. Stark (T. C. A.), U. R. C., 1899. Not required to be mutual and due in same right, where plaintiff is insolvent or a nonresident. Hanchett v. Gray, 7 T., 549; Castro v. Gentiley, 11 T., 28;

appeal to this court from the judgment or sentence of the court below, and to have the facts as well as the law, at his own election, opened for re-examination.

Having disposed of the preliminary question that the defendant in a criminal prosecution in the district court has the right of appeal from the judgment of that court to the Supreme Court, and shown conclusively, as we believe, that the Constitution has given the Supreme Court jurisdiction by appeal in criminal cases, we will next proceed to inquire whether it was error in the court below, in the case now under consideration, in overruling the motion in arrest of judgment. We will consider this decision of the district judge with an eye both to the law and the facts as shown by the record.

The motion in arrest of judgment was predicated upon the fact that the "dealing of faro, the offense charged in the indictment, was committed before the passage of the act entitled 'An act creating the County of Travis,' and within the then territorial limits of Bastrop County." Numerous authorities were cited by the counsel for the appellant upon the trial of this case in the Supreme Court to show that it was error in the court below to overrule the motion; but we are unable to see their application in this case, and we are satisfied that they do not comprehend this particular case. The motion was bad in arrest of judgment and properly overruled. If the reasoning was good in support of the motion in arrest, it would be equally good under similar circumstances in Bastrop County, because it was once called "Mina;" and in Harris County, because it was formerly called "Harrisburg." The present Congress has passed an act dividing Red River County into Red River, Bowie and Lamar; and this doctrine, if it were correct, would protect from just punishment any offender, however flagrant his offense, if committed before the passage of the act dividing the county, unless the offense should have been committed within the new territorial limits of Red River County. The counsel for the appellant with candor admitted that the appellant could not have been properly indicted and tried in Bastrop, and contended that inasmuch as the act creating the County of Travis contained no special provision for such cases as that of the appellant, that he could not be legally tried and convicted in either county. But what, we will ask, was the intention of the Legislature in passing the act creating the county of Travis? Was it to protect the guilty from punishment? Was it to open the prison doors to them that were bound, without making any compensation to an injured community and the violated laws? Was it to encourage crime, and insult the majesty of

Simpson v. Huston, 14 T., 476; Aycock v. Doty, 1 App. C., sec. 223; Bolton v. Sadler, 1 App. C., sec. 1227; Melvin v. Chancy, 8 T. C. A., 252; Fleming v. Stansell, 13 T. C. A., 558; Neely v. Grayson Co. Bank, 25 T. C. A., 513; El Paso National Bank v. Fuchs (T. C. A.), U. R. C., 1895; Anderson v. Whitehead (T. C. A.), U. R. C., 1901. Unliquidated damages can not be set off or plead in reconvention against a liquidated demand or debt, and vice versa. Rev. Stats., 1895, art. 754; Walcott v. Hendrick, 6 T., 406; Carothers v. Thorp, 21 T., 358; Cato v. Phillips, 28 T., 101; Walker v. Burks, 48 T., 206; Craddock v. Goodwin, 54 T., 578; Parks v. Dial, 56 T., 261; Riddle v. McKinney, 67 T.,

the Constitution? No! It had other motives and other intentions in view. Of this we are certain. And what they intended is binding upon us in expounding the law. And so we decide and affirm the judgment or sentence of the court below with costs, and order that this cause be certified to said court according to law, and that the sentence of said court be executed according to the record.

*Affirmed.*

Judges Hutchinson and Scurry say: "We concur in the result of this opinion; and that result, though attained by the members of the court upon some diversity of reasoning, etc., is to be the law of the case."

Nothing on record to show any further concurrence.

## No. XVII.

### Republic of Texas v. David Laughlin.

#### (See Note 19.)

*Appeal from Travis County.*

BAYLOR, JUSTICE.—In the District Court of Travis County, David Laughlin was tried on an indictment which charged him with having willfully, corruptly and erroneously taken and and demanded of one J. C. Tannehill a greater fee than is allowed by law for a certain judgment rendered by Laughlin as a justice of the peace for said county, in a civil action wherein one Wm. Y. Wood was plaintiff and said Tannehill was defendant, to-wit, the sum of twenty dollars in the promissory notes of the government; alleging said sum to be more than the fee allowed by law for costs in such cases; contrary to the duty of said Laughlin in his office, as justice aforesaid, and against the laws and statutes in such cases made and provided.

On his plea of not guilty, a verdict was rendered finding him guilty as charged.

Reasons in arrest of judgment were filed, and the district court, without rendering any judgment on the verdict or deciding the motion in arrest of judgment, referred to the Supreme Court for their "consideration and discretion, the matters of law arisng on the various grounds urged in arrest of judgment, as questions difficult and novel."

Before we are permitted to decide the several points made in this case, we feel it to be our duty first to dispose of a preliminary question; and that is, whether the record and proceedings before us make out a proper case for the interposition and decision of this court.

29; Howard v. Randolph, 73 T., 454; Rogers v. Watson, 81 T., 400; Taylor v. Bewley, 93 T., 524; Dempsey v. McKennell, 2 T. C. A., 284; Bank v. Kilgore, 17 T. C. A., 462; Santleben v. Froeboese, 17 T. C. A., 626; Taylor v. Bewley, 23 T. C. A., 509; Worley v. Smith, 26 T. C. A., 270; National Guarantee and Loan Co. v. Thomas, 28 T. C. A., 379; Davis v. McDowell, 1 App. C., sec. 380; Couch v. Parker, 1 App. C., sec. 438; Schmidt & Zeigler v. Rost, 1 App.

The Constitution of this Republic in directing the organization of the Supreme Court provides "that it shall have appellate jurisdiction only." Under a similar provision found in the Constitutions of other countries whose institutions and laws are analogous to our own, it has been decided that their supreme courts can not entertain jurisdiction in any case until judgment has been rendered in the court below, or unless it be to do some act in aid of their appellate jurisdiction.

The doctrine thus settled we leave open to future consideration, as it is sufficient for us to decide that nothing final has been done in this case from which an appeal can be taken.

The judge of the district court should have rendered judgment, subject to the opinion of this court, on the points reserved. By section 43 of the act establishing the districts courts, the judge of any district court may at his discretion in any criminal case reserve a question of law, which to him may appear novel and difficult, for the consideration and discretion of the Supreme Court at the next succeeding term, and the Supreme Court shall pronounce such *sentence,* or *judgment,* as the district court ought to have pronounced.

We think that this section of the act does not enlarge the jurisdiction, but that the only construction which can be given to it consistently with the *paramount law* is, that it provides an additional mode of bringing a case of this nature into this court, after judgment shall have been rendered in the court below.

This case having been sent up by the direction of the judge of the inferior court, it is ordered to be remanded to the District Court of Travis County, without costs, for the final action and adjudication of that court.

## No. XVIII.

### SOLOMON C. RICE v. GEO. POWELL

*Appeal from Washington County.*

HUTCHINSON, JUSTICE.—Powell sued Rice in respect of a draft of the auditor in his favor on the Treasurer of the Republic for $330, stating ownership; that it was pledged for a small sum, which had been tendered and the draft as well as its sum demanded but withheld; that Rice was about to leave Texas for the United States, and that therefore Powell, the plaintiff, asked writs of citation and attachment, and judgment for $330, Texas promissory notes, with interest and costs; or such other relief as should consist with law and equity. There was an affi-

C., sec. 684; Le Geirse v. Mathews, 1 App. C., sec. 779; Pittman v. Keith (T. C. A.), U. R. C., 1893; Wilson v. Manning (T. C. A.), U. R. C., 1896; Norwood v. Bank (T. C. A.), U. R. C., 1898; Hansen v. Yturria (T. C. A.), U. R. C., 1898; Presnall v. McLeary (T. C. A.), U. R. C., 1899. Except when the set-off is founded on a cause of action arising out of, or is incident to, or connected with, plaintiff's cause of action. Rev. Stats., 1895, art. 755; Egery v. Power, 5 T., 501; Walcott v. Hendrick, 6 T., 406; Hammons v. Belcher, 10 T., 271;

davit stating that the defendant had informed the plaintiff he was about to leave the Republic; and the fiat of the district judge, awarding the writs prayed, on bond being given in half of the sum demanded, with conditon to pay the damages to be sustained. On the 13th February, 1839, the petition was filed, granted; writs issued, and the attachment served on a keel-boat and the summons served on the defendant. The defendant, by way of plea, excepted to the process as illegal, and for that, and because of the insufficient affidavit and bond, prayed that the suit and proceedings should be quashed. On March 4, 1840, on his motion, the attachment was quashed by the court; a jury came, "who being sworn well and truly to try the issue joined by the parties," found for the plaintiff $323.75, "in the Treasury notes of the government of the Republic of Texas;" and there was judgment for that sum in such notes. If answer or plea to the merits was filed it is not exemplified; nor is any of the evidence certified.

Since the mode of civil prosecution according to the common law is not to be regarded, but that by petition and answer used; and since we are required to review proceedings in civil causes with an eye solely to the merits, we are reluctantly obliged to say that the narrative in the petition contains matters which, if true, amount to a civil inquiry of some sort. It was plainly correct to quash the attachment, and if that had been the only process, the suit should have followed that result; but though it was an abuse to pray and obtain in one and the same suit in the ordinary form process against the estate and the person, yet as the defendant was cited personally and appeared and pleaded, the order, on quashing the illegal writ, should have been, that the defendant have leave to answer or plead to the merits. It being stated in the postea that the jury were sworn to try the issue joined, we are left to infer he did answer or plead in bar; but from the negligence or want of skill in the clerk, it has not appeared in the transcript. The defendant can not urge as error the order quashing the attachment; it was on his motion and for his benefit.

But we can not sustain the verdict or judgment. On the facts stated in the petition, the plaintiff might have prayed restitution of the draft, and in that case the jury, on finding him entitled to it, should have so stated in their verdict, and assessed, in standard money, its value with the damages occasioned by the detention of the draft, on which the judgment would have been in the alternative, for the draft, if to be had, with the damages; and if not to be had, then the price assessed with those damages. Had specific restoration been a favorite or earnest object, and the detention either particularly injurious to the owner or

Castro v. Gentiley, 11 T., 28; Sterrett v. City of Houston, 14 T., 153; Brady v. Price, 19 T., 285; Bodman v. Harris, 20 T., 31; Ashworth v. Dark, 20 T., 825; Carothers v. Thorp, 21 T., 358; Duncan v. Magette, 25 T., 245; Coleman v. Bunce, 37 T., 171; Calhoun v. Pace, 37 T., 454; Beckham v. Hunter, 37 T., 551; Hoodhue v. Myers, 58 T., 405; Scalf v. Tompkins, 61 T., 476; Satterthwaite v. Loomis, 81 T., 64; Du Bois v. Rooney, 82 T., 173; Paschal v. Penry, 82 T., 673; Imperial Co. v. Bank, 5 T. C. A., 686; Brown v. Montgomery, 19 T. C. A., 548;

attended with circumstances of aggravation, the jury might have fixed the value so high as to have insured the restitution. In no way were Texas promissory notes demandable on the draft from the defendant. It was no evidence of his promise, or obligation to pay those notes, but they appeared payable on it at the Treasury. The jury, however, might have treated the suit as in the nature of an action of trover and assessed in damages, in lawful money, the value of the draft and the damages produced by its detention, putting both together into one amount. Their verdict being for Treasury notes, without any ratio or criterion of value formed, a valid judgment could not be rendered on it. A pecuniary judgment or decree can be given alone for a sum or sums in the currency of the Constitution. Congress has no power to require a creditor at large, or by adjudication, to receive in satisfaction any money other than specie, if required; and hence it would be worse than idle to adjudge or decree, and issue process to collect any other medium. It is true that tender may be good, if made in an inferior currency, if not objected to by the creditor; but his constitutional right to have the standard money can not be impaired; nor is it perceived that Congress has attempted it. To require the taxes and debts due to the government to be received in the emitted evidences of its own debt, can in no sense be illegal; and whether it be allowable or not to require ministerial and other offices to receive government notes in payment of salaries and fees, can be decided when the question is directly presented. We need not go into the learning upon the subject of the English jurisprudence on the topics presented in this case in regard to specie and an inferior currency; our Constitution has erected a standard of value which, in all matters of contract and pecuniary liability as among the citizens and in view of adjudication, can never be transcended or disregarded.

No other question has been raised in this case, nor does the record seem to present any other. The judgment must be reversed and the cause remanded. Some of the court have hesitated as to remanding; but a majority concur in that, and all of us agree in the reversal for the reasons given.

This cause coming on to be heard on the transcript of the record and the same being inspected, and the arguments of counsel heard, because it seems to the court here that in the proceedings below there is manifest error, it is therefore considered by the court here that the judgment herein by the District Court of Washington County be reversed and annulled; that the appellant recover of the appellee as well his costs in this behalf in this court expended, as the costs in the court below ex-

---

Howard v. Moore, 1 App. C., sec. 225; Bacon v. Lloyd, 1 App. C., sec. 285; McDonnell v. Bitters Co., 1 App. C., sec. 1160; G. C. & S. F. Ry. Co. v. Tacquard, 3 App. C., sec. 250; Scott v. M. N. Ry. Co., 4 App. C., sec. 287; Streeper v. Thompson (T. C. A.), U. R. C., 1893. Insolvency of plaintiff is no ground for setting off unliquidated damages against liquidated. Walcott v. Hendrick, 6 T., 406; Duncan v. Magette, 25 T., 245; Fondren v. Leake, 1 U. C., 151; Bennett v. Carsner, 1 App. C., sec. 619; Knight v. Old, 2 App. C., sec. 78; Smith v. Bates (T. C. A.), U. R. C., 1894; Presnall v. McLeary (T. C. A.), U. R. C., 1899. Liquidated debts or damages may be set off against liquidated. Sheldon v. Martin, 65 T., 409; Jones v. Hunt, 74 T., 657; June v. Brubaker, 5

pended by him prior to the said judgment; and that this cause be remanded to the said district court, with instructions to allow the appellee to amend his petition if he so desire, and the appellant to plead or answer to the merits; and that a new trial be had.

*Reversed and remanded.*

## No. XIX.

### D. G. & R. MILLS v. EDWIN WALLER.

(See Note 20.)

*Appeal from Brazoria County.*

HEMPHILL, CHIEF JUSTICE.—The appellants commenced their suit in the District Court for the County of Brazoria on the 28th day of February, 1837, against one John Thomas, to recover a debt of $958.22, with interest at 10 per cent from the first day of October, 1836, being the balance due on a note of hand drawn by the said Thomas in favor of the appellants, and dated the 17th day of May, 1835. The petition prayed for a writ of attachment, alleging that the said Thomas was an absentee, and that he owned a tract of about 800 acres of land in the county of Brazoria. The attachment was issued and executed on the day above named on the land described in the petition. On the 4th of March following, a supplementary petition was filed, alleging it had been discovered that the said Thomas had property of a movable nature within the county, and that unless the same were attached they feared the loss of their debt—the land being incumbered with a mortgage belonging to McKinney and Williams. On the second writ of attachment issued, the sheriff made the following return: "Not being able to find the specific property described in that instrument, I thereupon seized and sequestered all the property in this county in the *defendant's brand.*"

At the succeeding term of the court, the curator appointed to represent the interests of the absent defendant put in his answer, disclaiming for the defendant all right, title and interest in the land attached, and that long prior to the levying of said attachment the land had been sold by the said Thomas to one Moses L. Patton. At the said term of the court, Edwin Waller, the appellee, filed his plea of intervention, alleging his ownership of the land attached, and that it was in nowise responsible for the liabilities of Thomas. The appellants put in a general denial of the allegations of the intervener, and at the spring term of the court of 1838, the jury found a verdict in the following terms: "We, the jury, find judgment for Mills against Thomas for $950.22,

---

T. C. A., 79; Bank v. Lynch, 6 T. C. A., 590; Walker v. Fearhake, 22 T. C. A., 61; Bank v. De Morse (T. C. A.), U. R. C., 1894; Snelling v. Koerner (T. C. A.), U. R. C., 1894. Unliquidated against unliquidated. Bodman v. Harris, 20 T., 31; Sanders v. Bridges, 67 T., 93; Taylor v. Bewley, 93 T., 524. But damages arising from separate torts can not be set off against each other. Hart v. Davis, 21 T., 411; Boyd v. Clark, 21 T., 426; Shook v. Peters, 59 T., 393. **Mutual**

with interest at 10 per cent from the 1st of October, 1836, as specified in the note, and that the property attached is not liable for the debt." Judgment was in accordance with the verdict, and we are asked to reverse the same on various grounds.

1. It is alleged to be manifestly erroneous in not condemning the personal property attached as liable to the demand of the appellants. The return of the sheriff to the second writ of attachment is exceedingly indefinite. He does not enumerate the articles of property levied on, nor does he affirm that they are property of the defendant; but that being unable to find the specific property described in the instrument, he had seized on everything in the *defendant's brand*. With this vague return of the sheriff, and in the absence of all proof that the articles attached belonged to the defendant, we are of opinion that the jury was justified in finding that the said property was not liable to the debt of the appellants. But the decision of this question is unnecessary. The appeal bond has been executed in favor of the intervener alone; and our revision of the decision of the court below will not extend beyond the matters in controversy between the said intervener and the appellants.

2. That the sale from Thomas to Patton was void, on several grounds. First, the disparity between the price paid by Patton and the value of the land raises a violent presumption of fraud, which amounts to conviction when it is observed that Patton in his subsequent sale to Waller refuses to warrant against any existing lien. Patton purchased the land from Thomas in the town of Liberty on the 3d of April, 1836, for $1000, and on the 24th day of February, 1837, sold to Edwin Waller, the appellee, for $5500. It appears that the sale from Thomas to Patton took place at a time when the county of Brazoria was invaded by the Mexicans and generally abandoned by its inhabitants. It is stated that the land was proven to be worth $7000. It is to be regretted that facts are not more fully and clearly set forth in statements furnished from the courts below. We are not informed whether this was the value of the land at the period of its sale to Patton, or at the time of the trial—whether it was worth $7000 when the country was occupied by an overwhelming invading army and subjected to all the horrors of war, or in a period of comparative peace and prosperity. To raise the presumption of fraud the disparity must be shown to exist between the consideration paid and the actual value of the thing at the period of sale. We are not informed that this was attempted in this case, and the verdict of the

---

accounts may be set off against each other. Hall v. Hodge, 2 T., 323; Crook v. McGreal, 3 T., 487; Campbell v. Park, 11 T. C. A., 455. Usurious interest against principal. Huggins v. Citizens Bank, 6 T. C. A., 33. Apparent legal holder of note may plead it in set-off. Thomas v. Young, 5 T., 253. Courts have power to set off mutual judgments against each other, independent of statute. Simpson v. Houston, 14 T., 476; Duncan v. Bullock, 18 T., 541; Dutton v. Mason, 21 T. C. A., 389. Debt due deceased person or his estate may be set off in an action by legal representative, though it has not been presented for allowance. Morton v. Gordon, Dal., 396; Thomas v. Hill, 3 T., 270; Smalley v. Trammell, 11 T., 10; Hall v. Hall, 11 T., 526; Dickenson v. McDermott, 13 T., 248; Mitchell v. Rucker, 22 T., 66; Andrus v. Pettus, 36 T., 108; Alford v. Smith,

jury repelling the presumption of fraud, we are forced to the conclusion that the value proved referred to the time of the trial and not of the sale. From such evidence, the jury were not authorized to infer that the price paid for the land two years previously was so grossly inadequate as to be fraudulent against third parties, and especially when it is recollected that the sale was effected when the county was deserted by its inhabitants, desolated by a powerful invading force, and by many of the best patriots believed to be irretrievably lost.

There is no evidence that Patton had any knowledge at the time of his purchase of the existence of the demand of appellants against Thomas. This must be proven before the alienation to Patton could be set aside as fraudulent. It is not sufficient to establish fraud on the part of the vendor and actual injury to creditors; but a knowledge of the fraud on the part of the vendee must also be proven. In Curia, Phillip, Lib. 2, chap. 13, the law on this subject is expressed in the following terms: "Y asi en la enagenacion por titulo oneroso, se requieran tres cosas; fraude de parte del enagenante, y sciencia de el de parte del recibiente, y el evento o suceso del fraude en dano de los acseedores." See also Kenney v. Dow, 10 Martin, 577. Nor is there proof that the insolvency of Thomas was known to or suspected by Patton, or that the creditors of Thomas would be injured or affected by the purchase of the land. The fact that Patton in his sale to Waller refused to warrant against any other claim to the land than his own, does not in our opinion raise the presumption of fraud in the first transaction. Nearly eleven months elapsed between the first and the latter sale. Ample time was afforded Patton to become acquainted with the fact of incumbrances and claims against the premises; and his refusal to give more than a quitclaim title can not be regarded as other than an evidence of a desire on his part to avoid litigation.

But it is said that the sale from Thomas to Patton was an act under private signature; that the law of Louisiana in relation to attachments was then in force in this Republic, and that under that law it has always been decided that an attaching creditor had a preference over a purchaser under private act not recorded; and that therefore the sale to Patton has no force and validity as against the appellants. The decisions referred to were not founded on any provisions of the act regulating attachments; but on various other articles of the code prescribing the effect and operation of sales under private signature as between the parties to the same, and also in relation to third persons. This portion

---

40 T., 77; Traders Bank v. Cresson, 75 T., 298; Chapman v. Brite, 4 T. C. A., 506; Walker v. Fearhake, 22 T. C. A., 61; Collins v. Barbee, 3 App. C., sec. 126. If claim has been approved, can not be used as set-off without showing necessity for equity. Robb v. Smith, 40 T., 89; Floyd v. Rust, 58 T., 503. Executor can not set off damages for harassment and attorney's fees against claim due from estate; nor a debt due the estate by an assignor of a claim due by the estate. Selkirk v. McCormick, 33 T., 136; House v. Collins, 42 T., 486. An heir can not set off a debt due estate with his distributive share. Guthrie v. Guthrie, 17 T., 541. Set-off can not be allowed against State, unless authorized by statute. Borden v. Houston, 2 T., 594; Bates v. Republic, 2 T., 616; Chevallier v. State, 10 T., 315; Dean v. State, 54 T., 313, 314; State v. Snyder, 66 T., 687.

of the laws of Louisiana has never been in force in this Republic; and the decisions thereon can not be regarded as authority. It can not be denied, however, that the provisions of the laws of Spain in relation to private acts are similar to those of Louisiana, and that under both systems it is an established principle of law (though not without several modifications and exceptions) that acts under private signature have no dates as against third parties. The subject is not without its perplexities; but it will be sufficient to discuss and resolve them when they fairly arise in a case before the court. In the present instance it is unnecessary. The objections made to the act of sale is, that it was under private signature, and therefore inoperative against the appellants. Without touching on the subject of conveyances generally, we are of opinion that this was not a private, but an authentic act. It was executed before a notary public, with instrumental and assisting witnesses, and is free from all the objections which could be urged against it as an act under private signature. If it were agreed that this conveyance was effected by the registration law of 1836, yet it was not required to be recorded until long after the commencement of the action. It is, however, clear that the rights of the parties arose under the laws in force at the time of the execution of this instrument; that they are controlled and established by these laws, and not by subsequent acts of legislation.

Upon the consideration of the whole matter, the jury having found in favor of the appellee, and there being no sufficient proof to rebut the presumption always arising that a verdict is correct, we are of opinion that the appeal should be dismissed; and it is hereby ordered and decreed that the same be dismissed, and the judgment of the court below be affirmed.

*Dismissed.*

## No. XX.

### WM. G. HILL v. WM. McDERMOT ET UX.

#### (See Note 21.)

*Appeal from Brazoria County.*

HUTCHINSON, JUSTICE.—On the 9th of September, 1837, the appellees sued the appellant for restoration of the slaves Priscilla and her child Sylvia, or their value with damages and costs. The answer admitted defendant's possession, denied title in the plaintiffs, and averred that the defendant purchased from Edwin Waller, praying that he should be cited as warrantor. Waller answered, impleading Fitchett and Gill, his vendors; and they answered that they purchased from John Chafin, and impleaded his administrator, who in his answer denied the

When two are separately liable for the whole debt, it may be set off against either of them. Rust v. Burke, 57 T., 341; Fleming v. Stansell, 13 T. C. A., 558. Creditor of husband can not set off debt of husband against use and

allegations in the petition. There was a verdict for the plaintiffs against the defendant, and verdicts over for the respective vendees against their warrantors; but a new trial was granted. An amended petition was then filed, alleging that Chafin, in 1836, forcibly took from plaintiff Elizabeth, then the widow of Whitfield Sledge, the two slaves, which she believed her property, and of which she was peaceably possessed at the seizure. The answer to this is only a general denial, relying on prescription. On the 23d of March, 1840, there was a verdict finding the slaves to be the property of the plaintiffs, and assessing $900 as their value, and $350 the damages for their services; and a judgment for them for those sums with their costs.

The evidence, so far as certified, was that Sledge and wife emigrated from Georgia to Texas prior to August, 1835, in which month he died; that they brought with them the woman Priscilla, whose child Sylvia was born in Texas, though when born does not appear; that Sledge, on January 13, 1834, at Brazoria, made to John S. D. Byron the deed for Priscilla of that date, to secure $69 at three months; and on April 3, 1834, made a deed to Chafin for the same slave, to secure him on the 1st of January following $342, with $12\frac{1}{2}$ per cent interest, the Byron debt, with 5 per cent per month, and $25 borrowed by Pace; and that in the spring of 1836, Chafin, with force, took both slaves out of the possession of the plaintiff Elizabeth and carried them away. The deponent Tennelli, in his deposition, states that he knew the slaves were the property of the female plaintiff; but also mentions that he never heard Sledge or anyone else say the negro was exclusively her property. The deeds were acts under private signature, but were proved in court at the trial; and there was evidence of the value and hire of the slaves. It is not certified by the judge, nor does it otherwise appear, that these were all the facts proved. The court instructed the jury that the wrongful taking of the slaves could not be ground of damages between the present parties; that if the mortgage to Chafin was valid, or if the property in the negroes belonged to the succession of Sledge, they should find for the defendant; but if they believed from the evidence that the entire property in the slaves, at the taking, was in Sledge's widow, they should find for the plaintiff.

It is correctly contended that this being an action to recover specific property, it was incumbent on the plaintiffs to show title in themselves, and they could not prevail upon the mere want of title in the defendant. The suit involved the absolute right, dominion or ownership in the negresses, the demand being in that right; and to have justified a recovery, there should have been sufficient evidence of the allegation.

hire of wife's separate property. Carr v. Tucker, 42 T., 330. Quaere—Can damages growing out of suit in another State be pleaded in set-off in this State? Wiley v. Trawick, 14 T., 662; Withee v. Fearing, 23 T., 503. An assigned debt may be set off with a debt due from assignor before notice of assignment. Townsend v. Quinan, 47 T., 1; Fry v. Houston, 6 T. C. A., 710; Ellis v. Kerr, 11 T. C. A., 349; Tyler Car and Lumber Co. v. Wettermark, 12 T. C. A., 399; Henderson v. Johnson, 22 T. C. A., 381; McCarty v. Squyers (T. C. A.), U. R. C., 1896. Defendant may plead any set-off acquired before

filing plea. Thomas v. Young, 5 T., 253; Parrott v. Underwood, 10 T., 48; Wright v. Treadwell, 14 T., 255; Gaines v. Salmon, 16 T., 311; Lemmon v. Box, 20 T., 329.