**STAR–TELEGRAM, INC., d/b/a the Fort Worth Star–Telegram; Richard Connor, Individually and as President of Star–Telegram, Inc., d/b/a Fort Worth Star–Telegram; Michael Blackman, Individually and as Executive Director of Star–Telegram, Inc., et al., Relators,**

*v.*

**The Honorable Jeff WALKER, Judge, Respondent.**

No. D–1464.

Supreme Court of Texas.

July 1, 1992.

Thomas J. Williams, Fort Worth, for relators.

Mabel Murphy Simpson, Mark A. Haney, Roger Jeffrey Walker, Fort Worth, for respondent.

## OPINION

GONZALEZ, Justice.

The issue before us in this mandamus proceeding is whether a trial court may issue a protective order to prohibit a newspaper from publishing information already disclosed in open court and made part of a trial court's public record. We hold that the trial court's protective order violates article I, section 8 of the Texas Constitution, because it unreasonably restricts expression by preventing the dissemination of public information. This constitutes a clear abuse of discretion by the trial court for which there is no adequate remedy at law. We thus conditionally grant the writ and order the trial court to dissolve the protective order.

## I.

The victim and real party in interest was brutally raped on September 24, 1989. She reported the crime to the police who prepared an offense report that contained her identity. Based on this report, Star–Telegram published two news articles on September 27 and 28, 1989, neither of which contained her name.

On October 4, 1989, the victim filed a request to compel the use of the pseudonym "Jane Doe" in all public files and records concerning the offense pursuant to that provision of the Texas Code of Criminal Procedure which requires that the attorney for the State "ensure that the victim [of certain sexual offenses] is designated by the pseudonym in all legal proceedings concerning the offense." TEX.CODE CRIM.PROC. art. 57.02(f) (1992). A public servant who violates this request by disclosing the victim's identity to anyone not involved in the investigation or prosecution of the offense commits a class "C" misdemeanor.[1] Despite her request for anonymity, Jane Doe's real name was used in the indictment filed on October 26, 1989.

On June 15, 1990, Jane Doe filed a civil suit against Star–Telegram for invasion of privacy based on the paper's publication of the two articles relating to her rape. Although Star–Telegram did not use Jane Doe's real name, she alleged that the stories contained sufficient detail to identify her. Star–Telegram served its first set of interrogatories on Jane Doe asking for information relating to her identity, and she responded by filing a motion for protective

---

**1.** Article 57.03 provides:
   (a) A public servant with access to the name, address, or telephone number of a victim who has chosen to be designated by a pseudonym commits an offense if the public servant intentionally or knowingly discloses the name, address, or telephone number of the victim to any person who is not assisting in the investigation or prosecution of the offense or to any person other than the defendant, the defendant's attorney, or the person specified in the order of a court of competent jurisdiction.
   (b) An offense under this article is a Class C misdemeanor.
   TEX.CODE CRIM.PROC. art. 57.03 (1992).

order which was orally granted during a telephone hearing held on December 10, 1990.[2] Under this order, Star–Telegram was prohibited from publishing facts relating to the victim's identity.

About two months later, the attorney in charge of prosecuting the criminal case advised Jane Doe that using her real name during trial would increase the probability of conviction. Jane Doe agreed to the use of her name provided that the State would seal the records following the criminal trial. The assailant was tried and convicted on March 13–14, 1991, and Jane Doe's real name was used on numerous occasions throughout the trial. When Star–Telegram learned of this, it moved for reconsideration of the oral protective order.

On June 24, 1991, the State filed a motion for protective order in the criminal proceeding, which the criminal court immediately granted, also entering written orders sealing the files and expunging Jane Doe's real identity from the criminal records. Thereafter, the district court in the civil suit held a hearing on Star–Telegram's motion to reconsider the protective order. Jane Doe stipulated that the State used her real name in the indictment, the State's motion in limine, and its charge to the jury, and that she testified under her own name during the criminal trial. As proof of the State's agreement to maintain her confidentiality, Jane Doe introduced into evidence the criminal court's order expunging her identity from the record.

At the conclusion of the hearing, the trial court modified its oral protective order and reduced it to writing. The written protective order required all parties to maintain the confidentiality of Jane Doe's true identity by not disclosing it in any way to anyone other than the parties and lawyers in the civil suit. The order defined "identity" to include Jane Doe's real name, employment, home and work addresses and telephone numbers, social security number, and driver's license number.

## II.

We recently relied exclusively on article I, section 8 of the Texas Constitution to create a test to aid us in assessing the validity of gag orders in civil proceedings. *See Davenport v. Garcia,* 834 S.W.2d 4, 7–12 (Tex.1992). *Davenport* involved a prior restraint that prevented communications by the parties to a civil lawsuit as well as by a guardian ad litem who had already been dismissed from the suit. *Id.* at 6. The test established in that context applies equally in the situation before us, where we consider a prior restraint on a media defendant.

The two-part *Davenport* test prohibits prior restraints in civil judicial proceedings except in the extraordinary circumstance where the court, based on the evidence adduced, determines specifically that:

(1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and

(2) the judicial action represents the least restrictive means to prevent that harm.

*Id.* at 10. This test enables reviewing courts to ensure the preservation of the press' constitutionally sanctioned right of access to the judicial process.

Relying on a test that derives its strength from our own constitution is particularly appropriate here since the federal law on prior restraints remains somewhat unsettled. *See Id.* at 21 (characterizing the federal guidelines on prior restraint as "just a dotted line where road construction has not yet even gotten under way"); *Bernard v. Gulf Oil Co.,* 619 F.2d 459, 481 (5th Cir.1980) (Tjoflat, J., concurring) (jurisprudence of prior restraints is "a difficult and little-explored area of constitutional law"). The United States Supreme Court in *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), clearly disfavors prior restraints, but that case addressed prior restraints as applied to third party media complainants

---

**2.** On December 26, 1990, Jane Doe sought further protection by filing a motion to seal under Rule 76a of the Texas Rules of Civil Procedure, which motion was denied at a hearing on January 10, 1991. We do not reach any issues associated with Rule 76a. *But see Davenport v. Garcia,* 834 S.W.2d 4, 23–24 (Tex.1992).

who were unconstitutionally prohibited from reporting about a trial.[3] Here, Star–Telegram is the defendant in a civil suit but is restrained by the gag order from disclosing the plaintiff's real identity.

Applying the *Davenport* test to the facts before us, we first must analyze whether the order is necessary to prevent imminent and irreparable harm to the litigant's right to a fair trial. Ensuring the secrecy of the information covered by the order is in no way essential to ensuring a fair trial in this instance. Indeed, the information in question is no longer secret; it is already public. The State disclosed Jane Doe's true identity several times during the criminal prosecution of her assailant—in the indictment, in its motion in limine, and in its charge to the jury. Once filed, these instruments became part of the public record of the criminal case.[4] In addition, Jane Doe consented to testify under her true name as a witness for the prosecution.

Trial proceedings are public information. It is beyond dispute that the information relating to Jane Doe's true identity could be gleaned from the criminal court records and testimony. The order entered by the criminal court closing the files and expunging Jane Doe's true identity from the criminal records (more than three months following the criminal trial) could not retroactively abrogate the press' right to publish public information properly obtained from open records.[5] The law cannot recall information once it is in the public domain.

The Court of Criminal Appeals in *Ex Parte Foster*, 44 Tex.Crim. 423, 71 S.W. 593 (App.1903), discussed the article I, section 10 right to a public trial in conjunction with article I, section 8's assurance of a free press. In that case, the editor of a newspaper sought habeas corpus relief to allow publication of testimony adduced during a criminal trial. In *Ex Parte Foster*, the court held that a trial court is without power to prohibit the publication of testimony presented during the trial of a criminal case. 71 S.W. at 596; *see also Houston Chronicle Publishing Co. v. Shaver*, 630 S.W.2d 927, 932 (Tex.Crim.App.1982) (holding that trial judge's retiring to chambers to conduct remainder of hearing in private was equivalent to closing court to spectators and news reporters, thus denying public right of access to proceedings). Interpreting article I, sections 8 and 10, the court in *Ex Parte Foster* stated that:

[o]ur constitution is but in accord with the genius and the spirit of our free institutions, which is intended to guaranty publicity to the proceedings of our courts, and the greatest freedom in the discussion of the doings of such tribunals, consistent with truth and decency. And as has been well said, "When it is claimed that this right has in any manner been abridged, such claim must find its support, if any there be, in some limitation expressly imposed by the lawmaking power." And this imposition must be in accord with the provisions of our constitution guarantying the publicity of all trials, as well as the freedom of speech and of the press.

71 S.W. at 595.

The Court of Criminal Appeals followed *Foster* when it held, in *Ex Parte McCormick*, that a trial court could not prohibit newspaper reporters from publishing testi-

---

3. *See also Davenport*, 834 S.W.2d at 11 n. 20 and accompanying text (discussing the inadequacy of *Nebraska Press* and the split in federal authority on the scope of prior restraints as applied to trial participants).

4. Tex.Code of Crim.Proc. art 1.24 provides that "[t]he proceedings and trials in all courts shall be public."

5. We agree with the United States Supreme Court that:
   [a] trial is a public event. What transpires in the court room is public property. If a transcript of the court proceedings had been published, we suppose none would claim that the judge could punish the publisher for contempt. And we can see no difference though the conduct of the attorneys, of the jury, or even of the judge himself, may have reflected on the court. *Those who see and hear what transpired can report it with impunity.* There is no special perquisite of the judiciary which enables it, as distinguished from other institutions of democratic government, to suppress, edit, or censor events which transpire in proceedings before it.
   *Craig v. Harney,* 331 U.S. 367, 374, 67 S.Ct. 1249, 1254, 91 L.Ed. 1546 (1947) (emphasis added).

mony in a murder trial regardless of the trial court's assertion that such publication would impede a speedy trial by an impartial jury in the subsequent trial of an accomplice. 129 Tex.Crim. 457, 88 S.W.2d 104, 106–7 (App.1935). The court held that:

> [i]n the nature of things, the proceedings of public trials constitute news which newspapers have the right to publish in informing the public of current events.

*Id.* 88 S.W.2d at 107.

Just as the Texas Court of Criminal Appeals has upheld the right of media access to information disclosed at trial, the United States Supreme Court has struck down gag orders restricting the press' right to publish information gleaned from the judicial process. *See Nebraska Press,* 427 U.S. at 563–65, 567, 96 S.Ct. at 2804–06, 2807.[6] Consistent with the mandate of our constitution as well as the approach of both our sister court and of the United States Supreme Court, we uphold the right of the press to disseminate information obtained through public sources. Because the order in question fails to satisfy the first prong of the *Davenport* test, it violates article I, section 8 of the Texas Constitution, and unduly interferes with the ability of the press to print already public news we dissolve the order. By ensuring consideration of the right of the press to report and the right of the public to receive information obtained through public sources, the standard we follow today comports with Texas' longstanding commitment to a free press and the broad dissemination of information to our citizens.

### III.

We sympathize with the very real and devastating impact our conclusion may have on Jane Doe. Here, the State failed to uphold the victim's desire to keep her identity confidential when it allowed her name to appear in the indictment after she had requested and secured the right to use a pseudonym. Nevertheless, we cannot escape the conclusion that consensual disclosure of the victim's name during the public

criminal trial gave the right to the public and specifically the press and Star–Telegram to disseminate that information.

Because its order constitutes an invalid prior restraint on Star–Telegram's article I, section 8 right to disseminate public information, the trial court committed a clear abuse of discretion for which there is no adequate remedy at law. When such factors exist, mandamus is appropriate. Therefore, we conditionally grant the petition for writ of mandamus. The writ will not be issued unless Judge Walker fails to rescind the protective order in question.

PHILLIPS, C.J., concurs in the judgment.

Concurring opinion by HECHT, J., joined by CORNYN, J.

HECHT, Justice and CORNYN, Justice, concurring in the judgment.

I agree that the district court's order prohibiting the defendant *Star Telegram* from disclosing plaintiff's identity is overly broad and therefore invalid. I am unable to join in the Court's opinion, however, which is also overly broad. Accordingly, I concur only in the judgment.

The question in this case is whether a trial court may issue a protective order prohibiting the participants in a lawsuit from disclosing information which they obtained from public sources. The *Star Telegram* first learned that plaintiff had been the victim of a sexual assault from the police report filed on the incident. Plaintiff does not contend here that there was anything illicit about the way the *Star Telegram* first acquired information about her identity. Plaintiff does not deny that the *Star Telegram* knew of her identity apart from any discovery conducted in this case. Thus, this case is unlike *Seattle Times Co. v. Rhinehart,* 467 U.S. 20, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984), which upheld a protective order limiting disclosure of information obtained solely through discovery. The protective order in this case limits disclosure of information regarding plaintiff's

---

6. We note that any federal law cited in this opinion is looked to only for assistance, and is not controlling. Our decision today rests solely on the grounds of the Texas Constitution.

identity even though that information was obtained from a public source and not through discovery.

This Term we held a similar order invalid in *Davenport v. Garcia*, 834 S.W.2d 4. That decision governs this case. The Court continues to insist that the Texas Constitution is its exclusive authority, and that it used article I, section 8 "to create a test" for the validity of gag orders. The Court persists in mischaracterizing federal law concerning gag orders as "unsettled" and in ignoring the fact that the test it "created" is identical to the test this "unsettled" law prescribes under the First Amendment. That test is set forth in *Bernard v. Gulf Oil Co.*, 619 F.2d 459 (5th Cir.1980) (en banc), *aff'd on other grounds*, 452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981), and is derived from the several decisions of the United States Supreme Court on which it relies. Nevertheless, whether the First Amendment test is applied directly or borrowed for application under the Texas Constitution, the result is the same: the order in this case is overly broad. It limits disclosure of information regarding plaintiff's identity to defendants' attorney, personnel in his firm, the individual defendants and one other employee of the *Star Telegram*, plaintiff's attorney, and certain named persons in his firm. The order prohibits disclosure of plaintiff's identity to anyone else, even to potential witnesses.[1]

---

**1.** The order states in pertinent part:

1. "Plaintiff's Identity" for the purposes of this Order, is defined to include Plaintiff's name, Plaintiff's home address, Plaintiff's home telephone number, Plaintiff's social security number, Plaintiff's Texas Driver's License number, Plaintiff's occupation, Plaintiff's employer, Plaintiff's employer's address, Plaintiff's employer's telephone number, the Texas license number of Plaintiff's automobile,

2. Plaintiff's Identity will be disclosed to ... "Defendants' counsel"....

3. Defendants' counsel will keep Plaintiff's Identity strictly confidential by disclosing Plaintiff's Identity to only those Defendants named in Plaintiff's suit....

4. Defendants' counsel will keep Plaintiff's Identity strictly confidential by disclosing Plaintiff's Identity to only the personnel associated with his firm.

5. Defendants' counsel will keep Plaintiff's Identity strictly confidential by disclosing Plaintiff's Identity to only the following personnel associated with Defendant The Star Telegram, Inc. d/b/a Fort Worth Star Telegram, specifically Robert Fitzpatrick.

6. Defendants' counsel will keep Plaintiff's Identity strictly confidential by disclosing Plaintiff's identity to only those persons named in Paragraphs 3, 4 and 5 of this Order, who have consented to be bound by this Order and who have executed a consent form to that effect.

7. The Defendants named in Paragraph 3 of this Order, Defendants' counsel, those members of his firm named in Paragraphs 4 of this Order, and the personnel associated with Defendant The Star Telegram, Inc. d/b/a Fort Worth Star Telegram named in Paragraph 5 of this Order, will keep Plaintiff's Identity strictly confidential by not disclosing Plaintiff's identity, through either act or omission, to any person or entity not bound by this Order.

8. Defendants' counsel will keep Plaintiff's Identity strictly confidential by maintaining the files and documents related to this suit with access to the documents limited to those persons specifically named in Paragraphs 3, 4 and 5 of this Order who have consented in writing to be bound by this Order.

9. Defendants' counsel will keep Plaintiff's Identity strictly confidential by not filing any discovery documents with the Court, including but not limited to, interrogatories, requests for production or admissions, deposition transcripts, pleas, pleadings or motions.

10. Defendants' counsel will keep Plaintiff's Identity strictly confidential by removing Plaintiff's Identity from any and all documents to be filed with the Court, including but not limited to, interrogatories, requests for production or admissions, deposition transcripts, pleas, pleadings or motions.

11. ... "Plaintiff's counsel" will keep Plaintiff's Identity strictly confidential by disclosing Plaintiff's Identity to only the following personnel associated with his firm, specifically Mark Haney, Mabel Murphy Simpson, Jack Conner, Gary Jeter, Kathy Lawson and Debra Wooten.

12. Plaintiff's counsel will keep Plaintiff's Identity strictly confidential by disclosing Plaintiff's identity to only those persons named in Paragraph 11 of this Order, who have consented to be bound by this Order and who have executed a consent form to that effect.

13. Plaintiff's counsel and those members of his firm named in Paragraphs 11 of this Order will keep Plaintiff's Identity strictly confidential by not disclosing Plaintiff's identity to any person or entity not bound by this Order.

14. Plaintiff's counsel will keep Plaintiff's Identity strictly confidential by maintaining the files and documents related to this suit with access to the documents limited to those persons associated with his firm who are named in Paragraph 11 of this Order, and who have consented in writing to be bound by this Order.

15. Plaintiff's counsel will keep Plaintiff's Identity strictly confidential by not filing any

Because one of the participants in the litigation out of which this original mandamus proceeding arises is a newspaper, the Court discusses at some length issues concerning the rights of the press which we carefully did not address in *Davenport.* The Court analyzes three decisions of the Court of Criminal Appeals as they bear upon the rights of the press, and refers repeatedly and expansively to those rights as: "the press' constitutionally sanctioned right of access to the judicial process", *ante,* at 56; "the press' right to publish public information properly obtained from open records", *ante,* at 57; "the right of media access to information disclosed at trial", *ante,* at 58; "the press' right to publish information gleaned from the judicial process", *ante,* at 57; "the right of the press to report and the right of the public to receive information obtained through public sources", *ante,* at 58; and "Texas' longstanding commitment to a free press and the broad dissemination of information to our citizens", *ante,* at 58. The rights of the press have nothing to do with this case in which the *Star Telegram* is like any other litigant. Indeed, relators include individual employees of the *Star Telegram* who are also subject to the court's order and seek the same relief for the same reasons. The Court's references to the rights of the press are entirely dicta.

The Court also states: "Ensuring the secrecy of the information covered by the order is *in no way essential* to ensuring a fair trial in this instance." *Ante,* at 57 (emphasis added). Plaintiff may take issue with this statement. She argues that she is unable to pursue this litigation as vigorously as she might because of the fear that the *Star Telegram* will publish more information about her. This fear is not sufficient, in my view, to justify the court's broad protective order. It is not completely inconsequential, however, as the Court seems to suggest.

discovery documents with the Court, including but not limited to, interrogatories, requests for production or admissions, deposition transcripts, pleas, pleadings or motions.

16. Plaintiff's counsel will keep Plaintiff's Identity strictly confidential by removing Plaintiff's Identity from any and all documents to be

I agree with the Court that the trial court abused its discretion in issuing the order, and the *Star Telegram* has no adequate legal remedy. The attorney for the *Star Telegram* stated to the trial court that he did not think the newspaper would publish plaintiff's identity. This statement is not so positive and unequivocal as to estop the *Star Telegram* from seeking relief from the order by mandamus, or to deprive this proceeding of a justiciable controversy. I therefore join with the Court in conditionally issuing our writ of mandamus.

filed with the Court, including but not limited to, interrogatories, requests for production or admissions, deposition transcripts, pleas, pleadings or motions.

17. Counsel may not disclose the identity of Jane Doe to potential witnesses, but may determine if the witness knows her true identity.