The DALLAS MORNING NEWS and Public Citizen, Relators,

v.

The FIFTH COURT OF APPEALS, Respondent.

No. D–2991.

Supreme Court of Texas.

Oct. 21, 1992.

Separate Opinion and Dissenting Opinion Nov. 11, 1992.

---

Michael D. Mosher, Paris, Coyt Randal Johnston, Johnston & Budner, Dallas, Stephen Gardner, Dallas, Paul C. Watler, Susan M. Hull, James W. Bowen, Jenkens & Gilchrist, P.C., Dallas, for relators.

Richard Josephson, Baker & Botts, Houston, Earl Austin, Lynn S. Switzer, Baker & Botts, L.L.P., Dallas, Stephen E. Scheve, Robert J. McCully, Shook, Hardy & Bacon, Kansas City, Mo., for respondent.

## OPINION [1] ACCOMPANYING ORDER OVERRULING MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS AND MOTION FOR TEMPORARY RELIEF

GONZALEZ, Justice.

This original proceeding derives from a lawsuit by William R. Freeman and others against the Upjohn Company, alleging that Upjohn's drug, Halcion, caused Freeman to shoot and kill a close acquaintance. Months before trial, Upjohn sought protection from the dissemination of certain documents provided to the plaintiffs during discovery in a "Motion for Rule 166b Protective Order or, Alternatively, Rule 76a Sealing Order." Pending in the court of appeals is an appeal of the trial court's refusal to grant the Upjohn Company's motion for limitation of disclosure of certain documents under rule 76a of the Texas Rules of Civil Procedure. The court of appeals issued a temporary order limiting disclosure of the documents to those persons involved in preparing the case for trial, until further order from the appellate court.

The case reached trial before the disposition of the rule 76a appeal, and the record is silent as to whether any party requested a continuance.[2] The trial court ruled that there would be no limitation of access to any documents introduced into evidence. Upjohn sought an order from the court of appeals to continue to protect that court's jurisdiction over the rule 76a appeal. The court of appeals granted the motion and issued an order limiting disclosure of the documents to those involved in trying the case, (the court, and the jury), and set oral argument on the 76a appeal for November 9, 1992. The Dallas Morning News, Inc. and Public Citizen now seek a writ of mandamus to force the court of appeals to withdraw its order limiting access of the trial exhibits.

The press and the public have a right to be present at all proceedings in the trial of the underlying case, and to report all that they observe. There is every indication that relators have availed themselves of this right. Relators do not complain of any infringement of these rights. Rather, relators assert that they have an absolute right to immediate physical access to inspect and copy any and all exhibits introduced into evidence in the underlying trial of the case. They challenge the order of the court of appeals that temporarily denies them access to these exhibits. Thus, the focus in this case, despite the dissent's attempt to cast it elsewhere, is whether the court of appeals abused its discretion in temporarily staying access to trial exhibits while it considers the merits of the appeal in the rule 76a dispute currently pending in the court of appeals.[3] In other words, the issue in this case is whether the court of appeals is authorized to issue an order to protect its jurisdiction over an appeal pursuant to rule 76a of the

---

1. It is not our usual practice to write opinions explaining why we overrule motions for leave to file petition for writ of mandamus. But for the dissenting opinion in this case, this opinion would not be necessary. I am compelled to write because the dissenting opinion does not tell the whole story and misstates the law in several respects.

2. Undoubtedly, it would be preferable to resolve a rule 76a appeal before conducting a trial on

the merits. Any party may request expedited treatment from the court of appeals. *See* TEX. R.APP.P. 42(b). Even when every effort is made to resolve the rule 76a appeal with dispatch, there will certainly be instances when the appeal cannot be resolved before the trial on the merits.

3. As previously noted, oral argument in the court of appeals is only three weeks away.

Texas Rules of Civil Procedure. The court of appeals has such power. For the above reasons, I join in the Court's decision to overrule relators' motion for leave to file petition for writ of mandamus.

In order to evaluate whether the court of appeals abused its discretion, we would need to consider what was before the court of appeals when it issued the order now before this Court. The record from that appeal is not before us and the parties differ in their description of the issues entailed in that appeal. We cannot say that the court of appeals was precluded from taking notice of the record in its own pending appeal when it issued the order in question. It is relators' burden to bring forward an adequate record to show a right to relief. *Walker v. Packer*, 827 S.W.2d 833, 837 (Tex.1992). Having failed to bring forward all that is necessary to establish their claim for relief, relators failed to meet their burden for the issuance of a writ of mandamus.

The Texas Constitution provides that the courts of appeals have such appellate and original jurisdiction as prescribed by law. TEX.CONST. art. V, § 6. The Government Code provides that a "court of appeals ... may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court." TEX.GOV'T CODE ANN. § 22.221(a) (Vernon 1988). A court of appeals may issue such a writ to prevent an appeal from becoming moot. *Madison v. Martinez*, 42 S.W.2d 84, 86 (Tex.Civ. App.—Dallas 1931, writ ref'd).

Relators claim that this matter will not become moot because not all of the documents involved in the appeal will be introduced into evidence. There appears to be no dispute that the documents to be introduced into trial are a subset of the documents on appeal, and the record before us does not show if the documents in dispute have been offered into evidence by the plaintiffs or defendants in the suit. While perhaps the appeal will not be moot as to all documents, it will be moot as to any document that is introduced at trial. The right to appeal only unimportant or irrelevant documents is no right at all.

The dissent gives no consideration to the power, and indeed the necessity, of the courts of appeals to protect their jurisdiction. Courts of appeal routinely assert their right to safeguard jurisdiction. *See, e.g., Tanner v. Axelrad*, 680 S.W.2d 851, 852 (Tex.App.—Houston [1st Dist.] 1984, writ dism'd) (issuing writ to protect jurisdiction); *Becker v. Becker*, 639 S.W.2d 23, 24 (Tex.App.—Houston [1st Dist.] 1984, no writ) ("court is empowered to grant injunction relief for the purpose of protecting its jurisdiction over a pending appeal and to preserve the subject matter of the litigation so that its decree will be effective"); *Texas Employment Comm'n v. Norris*, 634 S.W.2d 85, 86 (Tex.App.—Beaumont 1982, no writ) ("This Court is authorized to issue such writs as may be necessary to protect the jurisdiction of this Court and to prevent the case from becoming moot"); *Mote Resources, Inc. v. Railroad Comm'n of Texas*, 618 S.W.2d 877, 878 (Tex.Civ. App.—Austin 1981, no writ) ("A Court of Civil Appeals may issue such writs as are necessary to protect its jurisdiction by preserving the subject matter of the lawsuit pending a hearing in the appeal"). The power of the courts of appeals to protect their jurisdiction is essential for the orderly administration of justice.

Relators claim a right of unfettered access to all exhibits as they are introduced into evidence under their right of freedom of the press under the United States Constitution, citing *United States v. Mitchell*, 551 F.2d 1252 (D.C.Cir.1976), *reversed on other grounds sub nom Nixon v. Warner Communications*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978). However, as the Supreme Court noted in *Nixon*, the right of access is not paramount over all other rights:

It is uncontested, however, that the right to inspect and copy judicial records is not absolute. Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to

insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." ... Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, ..., *or as sources of business information that might harm a litigant's competitive standing....* [Citations omitted, emphasis added.]

435 U.S. at 598, 98 S.Ct. at 1312. The issue in that case was whether Warner Communications was entitled to copy for broadcast and sale certain tapes entered into evidence at a criminal trial. The Court held that the right of the press to report what occurs in open court does not include "guarantee[ing] the press 'access' to—meaning the right to copy and publish—exhibits and materials displayed in open court." *Id.* at 609, 98 S.Ct. at 1317.

Relators also argue that they are entitled to the exhibits under the broad protection of speech and press found in article I, section 8 of the Texas Constitution. *Davenport v. Garcia,* 834 S.W.2d 4 (Tex.1992); *Star–Telegram, Inc. v. Walker,* 834 S.W.2d 54, 58 (Tex.1992). Assuming the test announced in *Davenport* is applicable,[4] the need to protect the right of appeal more than justifies the order of the court of appeals. The test set out in *Davenport* is:

(1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.

*Davenport,* 834 S.W.2d at 10. The loss of the right to appeal is clearly an imminent and irreparable harm to the judicial process. There has been no suggestion of any lesser measure which would keep the right of appeal intact. The relators have not complained that they have been barred from being present in the courtroom, from observing all proceedings, and from reporting their observations. They merely complain that the exhibits offered into evidence are sealed from public view.

■■■ Relators contend that Upjohn was required to make a complete rule 76a showing for any documents that would be introduced into evidence, in addition to the rule 76a proceedings currently on appeal. First of all, we cannot evaluate whether Upjohn satisfied the requirements of rule 76a in the proceedings now on appeal. Neither the documents nor pleadings from the 76a appeal are before us, and, in any event, jurisdiction over those issues remains in the court of appeals. Second, relators' arguments are premised on the claim that the only issue in the appeal is whether the documents are court records, which is conclusively established since exhibits introduced into evidence are *a fortiori* court records. However, as we understand Upjohn's argument, it is seeking protection on several grounds, including that the documents are protected from disclosure because they involve trade secrets and confidential business information.

■ Finally, and most importantly, it is not necessary to conduct a hearing under rule 76a in order to insure the trial court's compliance with an outstanding order from the court of appeals forbidding disclosure. All persons were required to respect the court of appeals' order until set aside or modified, and Upjohn was not required to do anything more than bring the order to the attention of the trial court.

■ The dissent is apparently of the view that the press and the public have an absolute right to immediate physical access to all exhibits introduced into evidence and that this right is paramount over all other rights. This is simply not true. If this were so, we would not have exempted all documents filed in an action arising under

---

4. The applicability of the *Davenport* test to situations not involving a gag order in civil judicial proceedings has not been conclusively established by this Court. The United States Supreme Court recognizes the difference between the right of access and the right to be free from prior restraint. *Gannett Co. v. DePasquale,* 443 U.S. 368, 391–393 & n. 25, 99 S.Ct. 2898, 2911–12 & n. 25, 61 L.Ed.2d 608 (1978); *Nixon v. Warner Communications, Inc.,* 435 U.S. at 608–09, 98 S.Ct. at 1317; *see also Belo Broadcasting Corp. v. Clark,* 654 F.2d 423, 432–33 (5th Cir.1981).

**660**

the Family Code [5] when we promulgated rule 76a, nor would we have denied the request of the television show "A Current Affair" when it requested to copy a surreptitiously recorded video tape introduced into evidence [6] in *Boyles v. Kerr*, 806 S.W.2d 255 (Tex.App—Texarkana 1991, writ granted). Also, access to records in juvenile proceedings are limited by statute. *See* TEXAS FAMILY CODE § 51.14. In sum, there is nothing in our Constitution, laws, or procedure that gives the press and public unlimited access to trial exhibits.

Here an open trial is being conducted in the trial of the underlying case. No one is being denied access to the proceedings. Anyone, including the press, can witness the proceedings, take notes and report anything he or she observes. Thus a contemporaneous review in the public forum is being provided. Just like the trial court in *In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1307 n. 8 (7th Cir. 1984), the case the dissent cites with approval, the court of appeals here has stayed access to relators pending a review of the merits of the rule 76a appeal.

▮ The dissent concludes that the court of appeals' temporary stay of disclosure pending appeal violated the relators' constitutional rights, and in doing so, necessarily reaches and decides the merits of the appeal. It decides these weighty issues, and finds the intermediate court lacking, without any acquaintance with the issues and evidence that confronted that court in the appeal. Relators have not presented this Court with the record that was before the court of appeals, or, for that matter, with the record that was before the trial court when it issued the ruling that led to the appeal. Relators, in fact, have provided very little in the way of exhibits. Upjohn has stated that its proprietary rights and trade secrets are in issue; it is not clear that relators argue to the contrary, but at the very least Upjohn's contentions raise a disputed issue of fact precluding manda-

mus relief. *Brady v. Fourteenth Court of Appeals*, 795 S.W.2d 712, 714 (Tex.1990).

The dissent then necessarily makes its decision without any way of knowing what factors the court of appeals may have weighed. Perhaps it deems a right of access to be absolute, and therefore regards such factors irrelevant. Under that analysis, rule 76a would be unconstitutional on its face because it purports to allow some records to be sealed, either because they involve family law matters, or because they involve a "specific, serious, and substantial interest" which clearly outweighs the presumption of openness and any adverse effect on the general public health, which interest could not be protected by means less restrictive than sealing the records. *See* TEX.R.CIV.P. 76a. If no such balance could be struck by a lower court, if the right of access is absolute, then there would have been little purpose in this Court denying the request for the "sex tape" and shuttling the request for access to the videotape in *Boyles* to the trial court.

No doubt, the dissent would apply the rule to this Court as well. Thus, if the court of appeals had promptly decided the rule 76a appeal, and the issue had been further appealed to this Court, this Court could not reach the merits of the appeal if the underlying case went to trial in the interim. And, no doubt, little purpose would be served by suing based on a theft of trade secrets or invasion of privacy because the litigation itself would guarantee that both interests would be destroyed. The statute allowing a pseudonym for a rape victim, which was not actually in issue in *Star Telegram*, would also be constitutionally suspect, since it in effect limits "access" to the main witness.

For all of these reasons, I join in the denial of the issuance of this extraordinary writ.

PHILLIPS, C.J., and COOK, HECHT, and CORNYN, JJ., join this opinion.

---

**5.** See Texas Rules of Civil Procedure 76a 2(a)(3).

**6.** See 815 S.W.2d 545.

SEPARATE OPINION

November 11, 1992.

PHILLIPS, Chief Justice.

My opinion of October 21, 1992, is withdrawn, and the following is substituted in its place.

Although I join in Justice Gonzalez' Opinion Accompanying Order Overruling Motion for Leave to File Petition for Writ of Mandamus and Motion for Temporary Relief, I write separately to express my regret over the necessity for such a writing, which was issued solely in response to an opinion dissenting from the Court's decision not to grant leave to file a petition for writ of mandamus.

For most of its existence, this Court has performed its judicial functions without published dissents or concurrences regarding decisions as to the composition of its docket. I believe this tradition has served us well. Whatever personal, institutional or societal benefits might be gained by such utterances are far outweighed by their deleterious effects on the currency of our docket, the orderly development of the law, and the harmonious workings among the justices.

I do not challenge the right of any justice to publish a dissent from any action of the Court. No written court rule, either external or internal, prohibits such action, and no vote was taken by the Court as to the propriety of this action. I express no opinion as to whether the Court could suppress such a writing. See *O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 97 (1992) (Phillips, C.J., concurring).

Moreover, I in no way question the validity or wisdom of dissenting or separate opinions in general. This Court issued its first concurring opinion in the ninth case decided in its initial term, *Winfried v. Yates*, Dallam 364 (1840) (Rusk, C.J., Hemphill, Mills, JJ., concurring). The first dissent was recorded the following term, *Fowler v. Poor*, Dallam 401, 403 (1841) (Baylor, Hutchinson, JJ., dissenting), and has been an accepted practice ever since. Their value to the orderly development of the law and the workings of this Court in

particular, and the American judicial system as a whole, is undeniable. See *O'Connor*, 837 S.W.2d at 96.

These attributes are not found in a dissent or concurrence from a court docket order, however, for several reasons. First, this Court's decision to decline to hear a case is not an adjudication on the merits. The only meaning of the ruling is that the case will not be heard. Thus, a dissent to such an order ultimately fails to join issue on any substantive legal point.

Moreover, a published dissent from such an order has no meaningful disciplining effect on a court opinion. "The prospect of a dissent or separate concurring statement pointing out an opinion's inaccuracies and inadequacies ... heightens the opinion writer's incentive to 'get it right.'" Ruth Bader Ginsburg, *Remarks on Writing Separately*, 65 Wash.L.Rev. 133, 139 (1990). When a case is not accepted for review, this rationale disappears.

Likewise, a dissent from a preliminary order does not benefit from a contemporaneous majority opinion. Thus, in addition to failing to discipline, it suffers from a lack of discipline. Although some members of the majority may respond to the separate opinion, as has been done today, the opinions inevitably do not reflect the considered deliberation present in a decision on the merits.

Far from serving a useful benefit, such a dissent may do significant harm. It may force other justices, whether in the majority or not, to disclose their own votes and the reasons therefor, a destruction of the "confidentiality [that] is especially valuable in the exercise of the kind of discretion that must be employed in processing the thousands of ... petitions that are reviewed each year." *Singleton v. Commissioner*, 439 U.S. 940, 946, 99 S.Ct. 335, 339, 58 L.Ed.2d 335 (1978) (Stevens, J., separate opinion). It leaves a dissenter with three choices: (a) say nothing and potentially be counted with the majority, (b) join the dissent and assent to the dissenter's reasoning, or (c) dissent separately from the first dissenter with a separate opinion, thus re-

vealing his or her conference vote and writing another unnecessary opinion. A justice in the majority is put to a similar election of having his or her views portrayed solely by the dissenting justice or justices, joining another responding opinion, or preparing a separate writing. This has the practical and pernicious effect of allowing a determined dissenter to alter the Court's agenda, forcing one or more writings on a case the Court has, pursuant to its own rules, decided to decline. Our rule of four votes to grant an application for writ of error or five votes to grant leave to file writ of mandamus can thus become a rule of one. This tyranny of the minority is particularly unwelcome at a time when some justices publicly assert that the Court is not timely disposing of the cases it does accept. See *Greathouse, Indep. Ex'x. v. Charter Nat'l. Bank–Southwest*, 35 Tex.S.Ct.J. 1017, 1020, 1992 WL 379408 (July 1, 1992) (Doggett, J., concurring); *Delaney v. The University of Houston*, 835 S.W.2d 56, 61 (1992) (Doggett, J., concurring).

Only once before in the history of our Court have such opinions been issued with any frequency. Between 1916 and 1919, Associate Justice William E. Hawkins issued a number of dissenting or concurring opinions to decisions of the Court not to grant application for writ of error. See, e.g., *State Nat. Bank of San Antonio v. East Coast Oil Co. S.A.*, 109 Tex. 510, 212 S.W. 621 (1919) (Hawkins, J., dissenting from denial of application for writ of error

and overruling of motion for rehearing); *Hicks v. Faust*, 109 Tex. 481, 212 S.W. 608 (1919) (Hawkins, J., dissenting from denial of application for writ of error and overruling of motion for rehearing); *Scott v. Shine*, 109 Tex. 412, 202 S.W. 726 (1918) (Hawkins, J., dissenting from overruling of motion for rehearing on application for writ of error and to recall from committee of justices of courts of civil appeals); *Terrell v. Middleton*, 108 Tex. 14, 191 S.W. 1138 (1917) (Hawkins, J., concurring in refusal of application for writ of error); *Beaty v. Missouri, K. & T. Ry. Co. of Texas*, 108 Tex. 82, 185 S.W. 298 (1916) (Hawkins, J., dissenting from overruling of motion for rehearing of denial of application for writ of error); *El Paso & S.W. Co. v. La Londe*, 108 Tex. 67, 184 S.W. 498 (1916) (Hawkins, J., concurring in overruling of motion for rehearing of denial of application for writ of error). See also *In re Subdivision Six of Supreme Court Jurisdiction Act of 1917*, 201 S.W. 390 (1918) (Hawkins, J., dissenting).[1] These opinions ended[2] when Hawkins lost to William Pierson in 1920, becoming the first member of our Court to be denied re-election by the voters.

It is ironic that this relapse comes now that the Legislature has restored greater discretionary jurisdiction to this Court. See Tex.Govt.Code § 22.001(a)(6); Ted Z. Robertson & James W. Paulsen, *Rethinking the Texas Writ of Error System*, 17 Tex.Tech.L.Rev. 1 (1986).[3] As we no long-

---

1. One contemporary scholar called Hawkins "one of the ablest judges who has served upon the Supreme Court of Texas in recent years," concluding: "The numerous opinions written by him disclose the superior judicial attainments, clear analysis, careful and painstaking research, forceful, convincing reasoning, and mature judgment which have characterized the learning of the greatest jurists who have served in that exalted tribunal." J.A. Davenport, *The History of the Supreme Court of the State of Texas* 275 (1917). But he authored frequent, sometimes lengthy dissents, see, e.g., *San Antonio & Aransas Pass Ry. Co. v. Blair*, 108 Tex. 434, 441–555, 196 S.W. 1153, 1153–1198 (1917), and relationships among the justices became strained. See, e.g., *Allen v. Pollard*, 109 Tex. 536, 539–40, 212 S.W. 468, 469 (1919) (Hawkins, J.)

2. I have located only one other such opinion prior to 1990, *Mutual Life Ins. Co. of New York*

*v. Hayward*, 88 Tex. 315, 30 S.W. 1049 (1895) (Alexander, J., special associate justice, dissenting from granting of application for writ of error), but I assume that other examples may exist. See *El Paso & S.W. Co. v. La Londe*, 108 Tex. at 68, 184 S.W. at 498.

3. Tex.Govt.Code § 22.001(a)(6) currently reads in part: "The supreme court has appellate jurisdiction ... in ... any other case in which it appears that an error of law has been committed by the court of appeals, and that error is of such importance to the jurisprudence of the state that, in the opinion of the supreme court, it requires correction ..." From 1927 to 1987, the section accorded jurisdiction over "an error of substantive law" that "affects the judgment ..." Tex.Govt.Code § 22.001 (Vernon 1985), Acts 1985, 69th Leg., ch. 480, § 1; see Tex.Rev. Civ.Stat.Ann. art. 1728(6) (Vernon 1962), Acts 1927, 40th Leg., ch. 144, § 1. From 1917 to

er serve primarily to correct the errors of lower courts, there is even less justification for opinions· such as those issued in this case.

## DISSENTING OPINION TO ORDER OVERRULING MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF MANDAMUS AND MOTION FOR TEMPORARY RELIEF

November 11, 1992.

DOGGETT, Justice.

My opinion of October 21, 1992 is withdrawn, and the following is substituted in its place.

In a public courtroom in Dallas, Texas, a trial is underway. As in any trial, lawyers are marking documents as exhibits that are offered into evidence for consideration by the jury. As in no other jury trial, an appellate court has interfered to prohibit the public from seeing the evidence. A principal reason for this extraordinary intrusion is a party's desire that evidence in a public trial "not be allowed to be published [in a local newspaper]."[1] That newspaper, The Dallas Morning News, has been joined by a public interest group, Public Citizen, in an emergency plea asking this court to permit the public to see the evidence introduced in accord with traditional Texas procedure.[2]

On October 5, 1992, trial began to determine whether Upjohn Company, a drug manufacturer, failed to warn adequately of the dangerous effects of its product, a sleep-inducing pharmaceutical, Halcion. On October 7, Upjohn asked the trial court to bar disclosure to the press and public of many of the trial exhibits to be offered by the parties. Upjohn claimed that the documents in question were included in pretrial discovery and were already the subject of a pending appeal *concerning disclosability*. While conceding the right of witnesses to

discuss and read aloud from the documents in open court in the presence of any attendee, Upjohn sought to prohibit the provision of the documents themselves to nonparties, particularly the press. No evidence of any type was offered in support of this unusual motion to seal. After a hearing, at which the trial court denied the motion, Upjohn obtained emergency relief from the Fifth Court of Appeals restricting exhibit access to the trial judge, jury and the parties' attorneys and expert witnesses.

Under Rule 76a(1), court records "are presumed to be open to the general public." Trial exhibits are unquestionably subject to this presumption. In Texas, court records belong to the people, and the people may be denied access to them only when a movant proves:

> (a) a specific, serious and substantial interest which clearly outweighs:
>
> (1) this presumption of openness;
>
> (2) any probable adverse effect that the sealing will have upon the general public health or safety;
>
> (b) no less restrictive means than sealing records will adequately and effectively protect the specific interest asserted.

Tex.R.Civ.P. 76a(1). Totally disregarding these requirements, Upjohn also failed to post public notice and schedule a pretrial hearing for consideration of its sealing motion concerning the trial exhibits as provided by Rule 76a(3) and (4).

Instead, it sought improperly "a temporary sealing order" which is authorized only

> upon a showing of compelling need from specific facts shown by affidavit or by verified petition that immediate and irreparable injury will result to a specific interest ... before notice can be posted and a hearing held.

Tex.R.Civ.P. 76a(5). This extraordinary procedure should not be used to evade the

---

1. Argument of counsel for Upjohn Company before the trial court.

2. William Freeman, the plaintiff in the underlying action, subsequently joined in the request for mandamus relief from the order of the court of appeals.

---

1927, the section accorded jurisdiction over "an error of law ... of such importance to the jurisprudence of the State, as in the opinion of the Supreme Court requires correction...." Tex.Rev.Civ.Stat.Ann. art. 1728(6) (1925), Acts 1917, 35th Leg., ch. 75, § 1.

notice and hearing requirements provided in the rule when circumstances allow ample time for compliance. Any emergency existing here was created solely by Upjohn's litigation tactics; the failure to seek protection during the last six months for these specific exhibits contradicts the claim of the immediacy of any harm. The claim that immediate and irreparable injury would result is further belied by the fact that the courtroom remains open and witnesses can read from and discuss the documents. Clearly an order barring access to the documents themselves would not provide further protection for any confidential information contained in the exhibits. The trial court correctly concluded that Upjohn failed to make the necessary showing under Rule 76a(5).

Upjohn's previously pending appeal represents a challenge to the trial court's March 1992 ruling that certain documents produced during pretrial discovery were court records to which public access was guaranteed under Rule 76a(2)(c). As provided by Rule 76a(8), that order denying records closure was final and appealable. *See Chandler v. Hyundai Motor Co.*, 829 S.W.2d 774 (Tex.1992). Pending its consideration of that ruling, the Fifth Court of Appeals temporarily stayed public disclosure in April.[3] Even if resulting in a determination that these materials are nondisclosable during discovery, that appeal in no way controls the public's presumptive right of access regarding the particular documents that are admitted as exhibits in a public trial. *See In re Continental Illinois Securities Litigation*, 732 F.2d 1302, 1310 (7th Cir.1984) (finding of "good cause" for pretrial issuance of protective order did not preclude public disclosure of same document after introduced into evidence). Nor is there any indication that all of the pretrial discovery documents subject to that appeal will be introduced as trial exhibits. Contrary to Upjohn's assertion, allowing nonparties to inspect and copy the trial exhibits would not moot its previous appeal. The issues there differ from those now before us, and cannot justify the veil of secrecy the majority imposes on these trial exhibits.

As it has so candidly admitted, Upjohn is not concerned with protecting proprietary interests, but solely with obstructing news media coverage of the trial. Accordingly, today's decision implicates the fundamental constitutional guarantee of freedom of the press. Only recently we have had an opportunity to consider the rights of free expression guaranteed by article I, section 8 of the Texas Constitution. In *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex.1992, orig. proceeding), we "affirm[ed] that a prior restraint on expression is presumptively unconstitutional" and announced that:

> [A] gag order in civil judicial proceedings will withstand constitutional scrutiny only where there are specific findings supported by evidence that (1) an imminent and irreparable harm to the judicial process will deprive litigants of a just resolution of their dispute, and (2) the judicial action represents the least restrictive means to prevent that harm.

*Id.* We clearly recognized that:

> [A]rticle one, section eight of the Texas Constitution provides greater rights of free expression than its federal equivalent [and].... that a prior restraint will withstand scrutiny under this test only under the most extraordinary circumstances. That result is consistent with the mandate of our constitution recognizing our broad right to freedom of expression in Texas. An individual's rights under the state constitution do not end at the courthouse door; rather, the courthouse is properly the fortress of those rights.

*Id.*

In *Star–Telegram, Inc. v. Walker*, 834 S.W.2d 54, 56 (Tex.1992, orig. proceeding), we declared that "[t]his [*Davenport*] test enables reviewing courts to ensure the preservation of the press' constitutionally sanctioned right of access to the judicial

---

**3.** Upjohn made no request to expedite the appeal, on which the court of appeals has failed to

act during the ensuing six months.

process." There we concluded that an "order to prohibit a newspaper from publishing information already disclosed in open court and made part of a trial court's public record" represented "an invalid prior restraint on Star–Telegram's article I, section 8 right to disseminate public information." *Id.* at 55, 58. In Texas we have recognized that this constitutional right of access to the judicial process encompasses the right of access to court documents as well as court proceedings.[4] The fundamental guarantee that our courts will remain fully open to all is today unjustly abandoned in favor of secrecy for the privileged few.

By its action, the majority has placed trial exhibits introduced in open court under lock and key. This hostility toward freedom of information is further displayed by the majority's conscious refusal to accord a sense of urgency to this emergency request for temporary relief. With each

passing day the ability of The Dallas Morning News and Public Citizen to inform the public about documents as they are introduced is reduced.[5] It is the "*contemporaneous review* in the forum of public opinion [that assures] an effective restraint on possible abuse of judicial power.'" *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 592, 100 S.Ct. 2814, 2835, 65 L.Ed.2d 973 (1980) (Brennan, J., concurring) (emphasis supplied; citations omitted). *See also In re Continental Illinois Securities Litigation,* 732 F.2d at 1309 n. 12, 1310 (applying "tradition of contemporaneous access" to mandate disclosure of evidence introduced in civil action).

As for the majority's objection to "an absolute right to immediate"[6] and "unlimited access to trial exhibits," Maj. op. at 660, when one seeking to exclude the public records proves no "paramount" interest, the right is absolute; access is unlimited.[7]

4. Nor, as the majority suggests, at 659 (Gonzalez, J.), are we required to do otherwise by the writing of four justices in *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979) (interpreting conflicting federal constitutional interests concerning the effect of public access to a pretrial suppression hearing on a defendant's right to a fair trial in a criminal proceeding). As that decision recognized, the federal charter lacks a specific provision guaranteeing access to the courts such as those found in many state constitutions. 443 U.S. at 386–87 & nn. 15 & 17, 99 S.Ct. at 2908–09 & nn. 15 & 17. The Texas Constitution unquestionably provides such a right. Tex. Const. art. I, § 13 ("All courts shall be open...."). Moreover, a majority of the justices in *Gannett* would deny public access only upon a showing of irreparable harm and that no less restrictive means to prevent that harm is available. 443 U.S. at 400–01, 99 S.Ct. at 2916 (Powell, J., concurring) & 441–42, 99 S.Ct. at 2936–37 (Blackmun, J., joined by Brennan, White, and Marshall, JJ., concurring and dissenting).

5. The implication that today's failure to grant emergency relief means "only three weeks" of delay until oral argument in the Fifth Court of Appeals is misleading. Maj. op. at 657 n. 3. By then, the trial will have ended; the public attention focused on this matter substantially diminished. Nor is there a likelihood of a final resolution as to disclosability at that time. Half of a year transpired between the filing of the prior appeal and the presentation of oral argument. Certainly additional months will pass before issuance of the appellate opinion. This prospect can hardly be viewed as "contemporaneous ac-

cess;" it represents no meaningful substitute for the access that is denied today.

6. Certainly in affording public access the trial court can take reasonable precautions to avoid disruption of a trial. That, however, is in no way at issue here. Judge Marshall apparently had full and appropriate control of the trial proceedings. The source of any disruption was not the media but the appellate courts.

7. The specific explanation offered by the majority for limiting freedom of information is, however, unpersuasive. Maj. op. at 659. "[D]ocuments filed in an action originally arising under the Family Code" are excluded in Rule 76a(2)(a)(3) from the definition of "court records" and are not therefore subject to the Rule's procedural requisites, but neither are they absolutely "exempt" from disclosure. Rather, Rule 76a(9) clearly provides that "[a]ccess to documents in court files not defined as court records by this rule remains governed by existing law." A court may well benefit from looking to Rule 76a procedures and principles in considering even those documents formally excluded from the Rule's definition. *See* Lloyd Doggett & Michael J. Mucchetti, *Afterword* to *Public Access to Public Courts: Discouraging Secrecy in the Public Interest, in* Texas Litigation Reader 158, 204 (A.F. Brooke II and Gregory S. Coleman eds., 1992). Nor did we make any determination on the merits with our order denying access to a videotape exhibit in *Boyles v. Kerr,* 815 S.W.2d 545 (Tex.1991). There, relying on Rule 76a(7), we simply "referred the movant to the trial court which has continuing authority to modify its sealing orders." *Afterword, supra,* at 204.

The right of access asserted here by the Dallas Morning News is no more or less "absolute" than that advanced by the Fort Worth Star Telegram in *Star Telegram, Inc.*, 834 S.W.2d 54. Freedom of information that vacillates—that is dependent upon whom it helps—is not much freedom. This is a vital principle that should not be defended when adverse to an individual personal injury plaintiff as in *Star Telegram* and surrendered when challenged by a corporate defendant here. Nor should this court accord emergency relief to *seal* records, *see Eli Lilly & Co. v. Marshall*, 829 S.W.2d 156 (Tex.1992, orig. proceeding) (Doggett, J., dissenting to granting of a drug manufacturer's motion for temporary relief to conceal documents within one day of its receipt), but deny prompt attention to *open* public records here.

The majority's reliance on *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978), to proscribe access to public trial exhibits is misplaced. At issue there was whether the trial court erred in prohibiting copying of the Watergate tapes when a full transcript was already publicly available. Rather than holding, as the majority asserts, that there is no right of access to materials considered in open court,[8] the Court stated:

> It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.... The interest necessary to support the issuance of a writ compelling access has been found, for example, in the citizen's desire to keep a watchful eye on the workings of public agencies, and in a newspaper publisher's intention to publish information concerning the operation of government.

435 U.S. at 598, 98 S.Ct. at 1312 (citations omitted). As the opinion makes clear, the situation in *Warner* differed substantially from that presented today:

> In the instant case, however, there is no claim that the press was precluded from publishing or utilizing as it saw fit the testimony and exhibits filed in evidence. There simply were no restrictions upon press access to, or publication of any information in the public domain.... There is no question of a truncated flow of information to the public.

*Id.* at 609, 98 S.Ct. at 1318. Here, there is no question that the press is barred from publishing and utilizing the trial exhibits, with the result that the flow of information to the public is seriously impaired.

Although joining in the majority's opinion, Chief Justice Phillips objects to any writing here on grounds that "this Court's decision to decline to hear a case is not an adjudication on the merits." At 661 (Phillips, C.J., concurring with "Separate Opinion"). When the question is whether a lower court may obstruct the ability of the press to provide to the public a complete statement of the evidence at a public trial, the refusal of this court to intervene constitutes an adjudication. Without the exchange of opinions occurring here, the public and the parties would simply be led to speculate as to why access to public trial exhibits has been denied. When this court of last resort concurs in the denial of access, an explanation is appropriate.

The implication of his opinion that the majority would be empowered to suppress writings such as this dissent is most troubling. *Id.* at 666. Dissents of this type have occurred both in this court,[9] *see id.* at nn. 1 & 2, and in the United States Supreme Court. Justice Stevens, upon whom Chief Justice Phillips relies in questioning the desirability of such opinions, *see id.* at 661, has himself exercised this right. *See Benten v. Kessler*, — U.S. —, 112 S.Ct. 2929, 120 L.Ed.2d 926 (1992) (Stevens, J.,

---

8. The language quoted by the majority from 435 U.S. at 609, 98 S.Ct. at 1317 as the holding is in fact a party's *argument* as to the scope of a prior decision.

9. Chief Justice Phillips voiced no similar concern as Justices Cornyn and Hecht wrote separately in an identical procedural context when this court denied temporary relief. *Del Valle Indep. Sch. Dist. v. Dibrell*, 830 S.W.2d 87 (Tex. 1992) (Cornyn and Hecht, JJ., dissenting from denial of request for temporary relief to stay or suspend court-ordered election).

dissenting). Nor do the vast majority of state courts across this country feel justified in silencing their own members.[10] Moreover, this court has previously noted the constitutional implication associated with a judge's right to dissent. *See O'Connor v. First Court of Appeals*, 837 S.W.2d 94, 96–97 (1992). Public awareness of our differing views on issues of such significance strengthens rather than weakens our system of justice.

Freedom of information is among the most critical liberties for our democracy. Without it, citizens cannot make the decisions necessary for the proper functioning of our government. Certainly this applies to these documents hidden from public view by the action of the majority solely to prevent their publication in a newspaper. As I have previously urged:

> Public court records are rich with democracy's indispensable raw material: information. ... Information's free flow allows citizens to govern their fate and fortune. When its passage is arrested or reduced to a trickle, control over our lives is wrested from our hands. If the public is to make intelligent decisions about our courts, our laws and the effectiveness of those officials that enforce them, a presumption of openness should govern.[11]

In the judiciary, our third branch of government, freedom of information should not be restricted or merely tolerated, it should be encouraged.

MAUZY, HIGHTOWER and GAMMAGE, JJ., join in this dissenting opinion.

---

10. A judge is apparently not prohibited from making known that judge's dissenting view to such an order in at least *thirty-eight* states: Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Michigan, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, and Wyoming. Responses to survey by William L. Willis, Executive Assistant, Supreme Court of Texas.

11. Lloyd Doggett & Michael J. Mucchetti, *Public Access to Public Courts: Discouraging Secrecy in the Public Interest*, 69 Texas L.Rev. 643, 653, 655 (1991) (footnotes omitted).